ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* ROBERT HITT.

Opinion delivered July 1, 1905.

1. CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—Where a traveler stopped at a railroad crossing, and looked and listened, but failed to hear an approaching train which was making little noise on account of the sleet, and was unable to see its headlight by reason of obstructing cars and the converging rays of an arc light and the headlight of a freight train standing near; and where trainmen were standing near, with better opportunity to see and hear than he had, who, so far as he knew, failed to warn him of danger, the question whether, in attempting to cross the track, he was guilty of contributory negligence was properly left to the jury. (Page 231.)

2. SAME.—If from the evidence fair-minded men may draw different conclusions as to whether the care exercised by the injured party was proportioned to the danger to be avoided, and such as the situation called for from men of prudence and caution, the question of contributory negligence is for the jury. (Page 231.)

3. SAME—INSTRUCTION—SINGLING OUT EVIDENCE.—In an action against a railroad company for negligently killing plaintiff's deceased at a street crossing, an instruction that if deceased stopped, looked and listened before driving upon the track, and by reason of the obstructions on the sidetrack, the arc light maintained by the town and the headlight of a freight engine, could not see the headlight of the passenger train in time to avoid the injury, and if no signals were given, and if deceased took such precautions as would have enabled him to see or hear the train if the signals had been given, they might find for the plaintiff on the issue of contributory negligence, was not erroneous as singling out certain parts of the evidence. (Page 232.)

4. Instruction—weight of evidence.—An instruction that if the death of deceased was caused by defendant's negligence, a recovery will not be defeated on the ground of contributory negligence unless deceased failed to exercise ordinary prudence, and such failure contributed to the injury, was not erroneous as an expression of the court's opinion on the weight of evidence. (Page 232.)

5. Same—contributory negligence.—In an action against a railroad company for a negligent killing at a crossing at which a freight train was standing on a sidetrack between deceased and the approaching train, so that such approach could not readily be seen or heard, the court's refusal to give an instruction that deceased had no right to drive on the main track without taking precautions after he passed beyond the sidetrack was not error where the centers of the two tracks were only fourteen feet apart, so that deceased's mules were on the main track before his wagon was clear of the freight train. (Page 233.)

6. Evidence—expectancy of life—annuity.—Testimony of a life insurance agent as to the expectancy of life, as shown by the mortality tables, of a man of Hitt's age, and an estimate of the amount required to purchase an annuity equal to his income, was admissible in an action for a wrongful death. (Page 233.)

7. Wrongful death—excessiveness of damages.—In an action for a wrongful death, a verdict for $10,000, which was less by $1,054 than the sum representing the value of decedent's income, was not excessive, though his personal expenses, which would probably have exceeded the difference, were to be deducted, if, in addition to pecuniary damages, there was to be considered the element of the loss of his care and attention to his minor children. (Page 234.)

Appeal from Clark Circuit Court.

Joel D. Conway, Judge.

Affirmed.

### STATEMENT BY THE COURT.

These facts are deducible from the evidence most favorable to sustain the verdict: On Sunday night, in January, 1902, the Hitts drove from their home, near the central part of Nevada County, into Prescott, a town of more than 3,000 inhabitants. They were in a covered wagon, and arrived at the crossing at Elm street after dark. The covering extended two feet over them, and on either side, leaving only the view in front unobstructed. This crossing was in the center of the town. It was a cold, windy day, and had been sleeting. The ground was covered with sleet and ice. When they reached the crossing, they found it blocked by a freight train on the side track, 1,200 feet long,

standing a few feet from the main line.  A brakeman was standing at the crossing, and they asked him when they could cross. The crossing remained blocked about 10 minutes, when the freight train "cut the crossing." Then they discussed whether it was safe to cross. Luther E. Hitt got up and looked up and down the track; extending his head beyond the wagon cover, thereby enabling him to see both ways.  His father called his attention to some cars on the track, and after discussing it they concluded it was safe to cross.  In driving across they continued to look forward, but did not extend their heads beyond the covering to see on either side.  The town maintained an arc light almost immediately over the crossing, and the headlight of the freight engine was burning, shedding its rays over the crossing. There were cars on both sides of the crossing.  The train which struck them came from the southwest, and was about an hour late.  Looking from where they were standing, in the middle of Elm street, the view was obstructed by cars on the spur track; a freight train was standing on the passing track; and down the railroad were two large warehouses and a coal house, which completely cut off their view from the direction which the train came.  The passenger engine was lighted with an electric headlight, whose beams could be seen a half a mile; but the reflection of this may not have been seen on the crossing in front of them, on account of the light thrown by the arc light and the headlight of the engine.  Luther Hitt testifies he did not detect it, although looking ahead.  The sleet and ice on the ground deadened the sound of the train, until, as the witnesses stated, it was running rather soft, and did not make as much noise as usual.  The train ran in past the crossing at a speed of from 18 to 20 miles an hour, and without ringing the bell or sounding the whistle, struck the wagon in which the Hitts were sitting, killed the father, and injured the son.  The point at which they stopped and looked out from under the wagon sheet was 82 feet from the track where they were struck.  The center of the side track was 14 feet and 6 inches from the center of the main track, and the spur track was still between the wagon and the side track.  They started to drive across slowly.  The brakeman at the pilot of the freight engine was standing on the ground, and they passed in front of him, not more than 25 feet away.  No watchman was kept at

the crossing. The brakeman made no effort to stop the wagon, and he knew the passenger train was coming.

Among other instructions given were the third and fourth, which are as follows:

"(3) You are further instructed that if you find from the evidence that the deceased or his son stopped, looked, and listened before driving upon the track, and further believe that by reason of the obstructions on the side track—the arc light maintained by the town and the headlight of the freight engine, if you believe these lights were burning—they could not see the headlight of the passenger train, or the reflection thereof, *in time to have avoided the injury*, and that no signals were given as defined in these instructions, and that the deceased and his son took such precautions as would have enabled them to have seen or heard the train if such signals had been given, you may find for the plaintiff as to the issue of contributory negligence.

"(4) If you believe from the evidence that the death of the deceased was caused by the negligence of the defendant company, a recovery cannot be defeated on the ground of contributory negligence unless it appears from the evidence that the deceased himself failed in the exercise of ordinary prudence, and that such failure so contributed to the injury that it would not have occurred if he had been without fault. Contributory negligence will not be presumed; but must be proved by a preponderance of the evidence."

The court refused to give the sixth instruction requested by appellant, which is as follows:

"(6) The court instructs the jury that if they find from the testimony in this case that at the time in question a freight train was standing on a track parallel to the track on which the approaching train was, and that such freight train was between plaintiffs on the highway and the approaching train, so that the approaching train could not be seen or heard readily, then the plaintiffs had no right to drive on the track without taking precautions after they passed beyond the freight train, where they could see and hear the approaching train, and there looking and listening before attempting to cross the track in front of the approaching train; and if they failed to do this, and in conse-

quence of such failure were injured, your verdict should be for the defendant."

The appellees received a judgment for $10,000. Hitt was 56 years of age; was making $1,000 per annum, derived from farming, trading, and the mercantile business. He left a wife and nine children, of whom six were minors at the time of his death—the youngest about five years old. He was a stout, healthy man, and shrewd in business affairs. A witness was asked, "What was his character, with reference to attention to and care of his family?" and answered, "It was very good." Again he was asked: "You say he was a man who took good care of his family? A. Yes, sir; as good as any man, I should think."

*J. E. Williams* and *B. S. Johnson,* for appellant.

*McRae & Tompkins,* for appellees.

Hill, C. J., (after stating the facts.)  1.  The negligence of the company in failing to give the signals required by law was abundantly established, and the conflict in the evidence on this point has been settled by the jury. The next question, and the one most earnestly presented here, is that the evidence showed that Hitt was guilty of contributory negligence in driving on the track under the circumstances set out in the statement. Mr. Justice Brewer, speaking for the Supreme Court of the United States, said: "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them. (Citing authorities.)" *Richmond & D. Rd. Co.* v. *Powers,* 149 U. S. 43. The authorities sustaining this doctrine are collected in *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549, 33 S. W. 1070. Testing the evidence upon this principle, it cannot be said that the facts disclose a situation rendering it negligence for Hitt to drive onto the track. At a distance of 82 feet from the track he took the precautions required by law and common sense, and, neither seeing nor hearing anything to indicate a train was coming on the main track, and, the way being made clear, and

employees standing near, with better opportunity of seeing or hearing than he had, who would doubtless warn him for humanity's sake alone, if no duty rested on them, not to cross in front of a rapidly approaching train, and, after consulting with his son, the fatal drive began. While it is true the sheet of the wagon obstructed the vision on either side, and in a measure the hearing, yet they believed from their investigation that the way was clear, and they continued to look ahead and listen. The electric arc light and the headlight of the freight engine, casting their rays on the crossing, might well tend to prevent the discovery of the light from the headlight of the approaching train. The situation confronting Mr. Hitt was not such as requires the court to say, as a matter of law, that it was *per se* negligence, under the circumstances, to attempt to cross the track. The ringing bell or sounding whistle would doubtless have given the warning of the approaching train, which was not otherwise apparent to Mr. Hitt or his son. These are facts from which fair-minded men may draw different conclusions as to whether the care exercised was proportional to the danger to be avoided, and such as the situation called for from men of prudence and caution. When such are the facts of a case, then the question must be settled by a jury, under proper instructions.

2. The next matter assigned as error is the giving of the third and fourth instructions, which are set out in the statement of facts. The point urged against these instructions is that they displayed to the jury an expression of opinion upon the part of the court upon the weight of the evidence. It is further urged against the third that it has singled out certain parts of the evidence in favor of the plaintiff, and disregarded every item of contributory negligence, and, without referring to the same, in a counter statement, has said the weight of this specific evidence is sufficient to set aside all the evidence establishing contributory negligence. If there is evidence to sustain a particular theory of a case, the court should properly instruct the jury as to such theory. *Smith* v. *State,* 50 Ark. 545, 8 S. W. 941. Instructions should declare the law as applicable to any view of the facts which upon the evidence may be taken by either of the parties to the cause on trial. *Luckinbill* v. *State,* 52 Ark. 45, 11 S. W. 963. Every instruction should be hypothetical, *i. e.,* predi-

cated upon the supposition that, if certain evidence be true, then the legal consequence resulting therefrom is one way or the other. *State Bank* v. *McGuire*, 14 Ark. 530; *Collins* v. *Mack*, 31 Ark. 684. It is error to refuse to give a specific instruction correctly and clearly applying the law to the facts in the case, even though the law, in a general way, is covered by the charge given. *St. Louis & S. F. Rd. Co.* v. *Crabtree*, 69 Ark. 134, 62 S. W. 64. Applying these settled principles to the instruction in question, it cannot be said that they are open to the objections urged. Each side prayed and was granted many specific instructions, covering phases of the case which they desired drawn sharply to the attention of the jury. The court fails to find error in them, and, taken together, they consistently present the whole case, generally and specifically.

3. Error is assigned in the refusal of the court to give the sixth instruction. The distance from the center of the side track upon which the freight train stood to the center of the main track, upon which the train was approaching, was 14 feet. It was therefore an impossibility to have avoided the accident at that late moment. The mules drawing the wagon were on the main track before the wagon could have cleared the freight train, and the freight train behind them was whistling at that moment. The care is to be measured by the act of going into this danger, not when it is too imminent for avoidance, and when excitement and danger dethrone judgment. The case was properly submitted under instructions fully explaining the care required, and it was not error to refuse to give this one.

4. Objection is made to admission of testimony of a life insurance agent as to the expectancy of life, as shown by the mortality tables, of a man of Hitt's age, and an estimate of the amount required to purchase an annuity equal to Hitt's income. These tables were held admissible, and their uses explained, in *Arkansas Midland Ry. Co.* v. *Griffith*, 63 Ark. 491, 39 S. W. 550. The record fails to show the calculation complained of, but it could not be error, as it was but relieving the jury of the labor involved in it. The court gave the following instruction on the subject: "If your verdict should be for the plaintiffs, you will assess the damage at such sum as will compensate them for their pecuniary loss resulting from the death of the husband and father. In estimating this loss, it is proper for you to take into

consideration the age, health, habits, occupation, expectation of life, mental and physical capacity for and disposition to labor, and the probable increase or decrease of that ability with the lapse of time; his earning capacity; the care and attention, the instruction and training, one of his disposition and character may be expected to give to his family—and thus determine the value of the life. From this amount deduct the personal expenses of deceased, and the balance, reduced to its present value, would be the present amount of your verdict, provided such of the deceased's children as were minors at his death or at this time would not be entitled to any compensation on account of death of deceased for a period beyond the time of their attaining their majority." It is seen, therefore, that the court properly gave the elements to consider in arriving at the compensatory amount. If the calculation was made, it was useful only to reach the probable amount required to purchase the annuity to represent his income, and from such amount personal expenses were directed to be deducted.

5. The verdict is assailed as excessive. It is less, by the sum of $1,054, than the sum representing the present value of his income. Of course, his personal expenses should be deducted —likely much more than said $1,054; but, on the other hand, there was another element proper to enter into the verdict, and that was the loss of his care and attention to his minor children. *St. Louis & N. A. Rd. Co.* v. *Mathis, ante,* p. 184, and cases there cited. The verdict is not excessive.

The judgment is affirmed.

BATTLE and RIDDICK, JJ., dissent.

### ON REHEARING.

### Opinion delivered July 29, 1905.

HILL, C. J. In their brief on motion for rehearing counsel for the appellant challenge the correctness of various statements in the "Statement by the Court," and also raise anew questions of law determined on the former hearing.

The statement by the court does not purport to decide any conflicts in the evidence, nor detail the testimony of the witnesses, but merely to state facts deducible from the evidence most favorable to appellees, in order to test the sufficiency of them to sustain the verdict.

1.  The first statement challenged is that the train on the side track was 1,200 feet long. They quote from the engineer in charge of it to the effect that he had only a couple of cars attached to the engine; but further in his evidence he showed he was going back to couple to the rest of the train, and that it altogether had about twenty cars, and that their average length was 60 feet, which would make the whole train 1,200 feet, as stated. As it was all between the Hitts and the main line, part on either side of the crossing, it was considered by the court as it was presented to the Hitts.

2.  The next statement challenged is this:

"They started to drive across slowly. The brakeman at the pilot of the engine was standing on the ground, and they passed in front of him, not more than twenty-five feet away. No watchman was kept at the crossing. *The brakeman made no effort to stop the wagon, and he knew the passenger train was coming.*"

There is some negative testimony to the effect that there was no holloing to the Hitts by the brakeman, but the court did not intend to find that as a fact deducible from the evidence, but merely that no effort to stop them was made which was known to the Hitts. The court was considering the situation entirely as viewed by the Hitts when they started to drive across, and was not sustaining any negligence against the company predicated on the dereliction of the brakeman to stop the Hitts. The court has no doubt that the truth was exactly as stated by the brakeman, as follows:

"You made no effort to get in front of the team and stop them?"

"No, sir, I didn't make any effort to get in front of it."

"Did they reply to you when you holloed to them?"

"No, sir; not that I remember. Whether they noticed it or not, I can't tell."

Counsel argue the point as if the court was predicating negligence against the appellant on the ground that the brakeman made no effort to stop them, and call attention to the abundant evidence of his and other cries to them just before they were struck. As stated, the court did not consider the conduct of the brakeman in considering evidence of the negligence of the appellant, and was considering the situation of the brakeman and

his actions, so far as known to the Hitts, in determining whether or not they were guilty of contributory negligence *per se* in attempting to make the crossing. The brakeman had a few minutes before, when the crossing was blocked by the train, told them it would soon be cleared, and it was soon cleared, and he was seen standing near by and in a position where he could better see and hear than they could. In determining whether the clearing of the way was an invitation to cross, and whether it was safe to cross, the Hitts could properly take into consideration that the brakeman was standing in a favorable position to see any danger, and, as stated in the opinion, aside from any duty resting on him, would doubtless, from humanity's sake, warn them of any danger which his better position would enable him to see and hear. The fact that they did not hear his cries later, which is shown, does not change the situation as presented to them when they started to make the drive across the tracks. While not a factor in determining the negligence of the company, it is a factor in measuring the conduct of the Hitts, and as such alone was it considered by the court. The statement complained of should read: "The brakeman made no effort to stop the wagon *known to the occupants.*"

3.  Other matters are presented in the brief, and have been considered, but they are the same matters heretofore presented and considered, and of them counsel say:

"The court's attention was called to all of these facts in the original brief, and the record shows them as we have here quoted them. Are we not entitled to a rehearing? And should not this case be reversed? We have tried, respectfully, to refer the court to the testimony, which has been evidently overlooked; or, if not overlooked, has not been carefully considered by the majority of this court. We deem it our duty to bitterly protest against the ruling of the majority of this court. We deem it our duty to show to this court how it has rendered a judgment directly in violation of the repeated decisions, unbroken, of this court."

The court is unaware of overruling or failing to follow any previous decision of this court, but, on the contrary, believes that it is but applying the principles of many previous decisions. On the chief point in the case—whether the action of the Hitts in making the drive across the track was *per se* contributory

negligence, or whether they exercised the care required by law—the court applied a familiar principle upon which the authorities are collected in *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549, and which is fully stated by the Supreme Court of the United States in *Richmond & D. Rd. Co.* v. *Powers,* 149 U. S. 43.

The motion for rehearing is denied.

Mr. Justice BATTLE and Mr. Justice RIDDICK dissent.