ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* WYATT.

Opinion delivered June 4, 1906.

RAILWAY CROSSING—CONTRIBUTORY NEGLIGENCE.—Where, in an action against a railway company for injury to a traveler at a highway crossing, there was evidence that plaintiff looked and listened before going on the track, but that on account of obstructions he was unable to see an approaching train in time to avoid the injury, and that on account of defective hearing he was unable to hear it, the question whether he was guilty of contributory negligence was properly left to the jury.

Appeal from Craighead Circuit Court; *Allen Hughes,* Judge; affirmed.

*L. F. Parker* and *W. J. Orr,* for appellant.

The testimony shows that there was a point between the main line and the belt line where appellee could have seen the engine approaching for a distance of 164 feet, had he looked. It was his duty to look and listen, and to continue looking and listening until all danger was passed. 69 Ark. 134; 119 Fed. 157; 86 S. W. 283. If it be conceded that there was negligence on the part of appellant, still this did not excuse appellee from the duty to exercise care as a reasonable and prudent person for his own safety. 105 N. W. 557; 95 U. S. 697; 16 Atl. 624; 20 S. W. 162. Both the physical facts and the testimony of plaintiff prove his contributory negligence, and the case should have been taken from the jury. Authorities *supra;* 56 N. W. 603; 55 Atl. 627; 90 S. W. 136; 24 Atl. 747. See also 54 Atl. 276; 174 U. S. 379; 139 Fed. 739; 70 Ark. 606.

*F. G. Taylor,* for appellee.

Appellee, when about to go upon the crossing, fully performed his duty by stopping, looking and listening at the only place where he could stop with safety. Having done so, he had a right to presume that appellant's employees would perform their duty. 18 N. W. 651; 4 N. E. 84. Where there is a doubt as to the proper place to stop, look and listen, as a general rule such questions will be referred to the jury. 54 Atl. 276. If the negligence of the injured party is of a negative character, such as lack of vigilance, and no injury would have resulted from it but for the primary wrong or negligence of the corporation or its servants, it will not defeat a recovery. 23 Fed. 738; 7 N. E. 801. Where the question arises upon a state of facts on which reasonable men may fairly draw different conclusions, the fact of negligence is one for the jury. 61 Md. 53; 5 Atl. 329; 22 N. E. 20; 43 Pac. 1136; 74 Pac. 1104.

Hill, C. J. The instructions were more favorable to the appellant than it was entitled to, and the sole question in the case is the sufficiency of the evidence to sustain the verdict for the appellee.

Culberhouse Street in the city of Jonesboro runs north and south, and crosses at right angles the tracks of appellant railroad. The first track on the north is called the "belt line," and it is 41 feet from center to center of the next or main line track.

There are 36 feet in the clear between these tracks. The street is somewhat down grade from the belt line track to the main line; as one witness expressed it, "it is enough down hill for your wagon to run up on your team." Between these tracks, and on the east of the crossing, is a coal chute, and west of the chute is a projection to it, built of heavy timbers. Coming from the north on Culberhouse Street, it is impossible to see an engine on the main track beyond the point of the coal chute until just about to the main line track, and this projection, or scaffolding, partially obstructed the view from where it begins.

It is 52 steps (156 feet) from the main line crossing to the coal chute, and it is 37 steps (111 feet) from the same point to the projection to the chute.

Mr. Wyatt, the plaintiff below, was an old man of 82 years at the time of his injury. He was driving a pair of mules to a wagon partially loaded with corn, and he was sitting on his load. He was going south on Culberhouse Street, and as he approached the crossing he stopped before reaching the belt line track. He looked and listened there. He was afflicted with the "hard hearing" of old age. The belt line track was filled with box cars on either side the street, and a space of about 20 feet left to pass through. It was impossible to see east on the main line from where Mr. Wyatt stopped. Seeing and hearing nothing of a train, he drove on rapidly, intending to rush on through the crossing, as he thought no train was then approaching, and that it was best to get across the tracks quickly. A switch engine, moving rapidly from the east, struck the rear of his wagon, upsetting it and severely injuring him. The mules were on the main line track, or near to it, when he first saw the engine, which appeared to be only ten or twelve steps away. He was uncertain whether it was safest to try to back his mules or run them across, and tried the latter, and got hit. Mr. Wyatt heard no bell ringing or whistle sounding, and several other witnesses testified that the signals were not given.

In regard to looking and continuing to look and to look both ways, the testimony of Mr. Wyatt is not as clear as it might be, and is contradictory. All of it, so far as relates to this point, is as follows: On direct examination he said: "Were you looking as you approached the track?" "I was looking."

On cross-examination, this is the statement: "You didn't stop any more until you were hit?" "No, sir." "You didn't look to the right or left until you got on the track?" "No, sir."

The following is the redirect and recross-examination in full:

### REDIRECT EXAMINATION.

Q. "At the time you stopped to look and listen before you started across could you hear any bell ringing or whistle sounding?". A. "No, sir."

Q. "Or engine puffing?" A. "I could not hear anything."

Q. "And when you saw that you could not see or hear any train you started across there?" A. "Yes, sir."

Q. "After you got past the box cars, could you see any train then?" A. "I saw the engine when I got past the box cars."

Q. "But at the time you saw it you think your mules were just about on the track?" A. "That is my idea; that they were on the track the engine was on."

Q. "And you could not back them?" A. "I could not back off or run across fast enough to keep from getting caught."

Q. "Now, as you approached this crossing, were you looking for a train?" A. "I was looking; I never crossed there but what I was looking."

Q. "And you could see part of the way on both sides of you?" A. "Yes, sir."

### RECROSS EXAMINATION.

Q. "You say you were looking as you approached that crossing. That was before you stopped, was it?" A. "Yes, sir; I looked then and afterward, too."

Q. "You could not see these for the box cars?" A. "I was looking to see whether or not there was any person to tell me whether or not there was any danger."

While Mr. Wyatt stated on cross-examination that he did not look, yet he stated positively in the same examination that he did look, and no point was then made that he had contradicted himself, and his attention was not called to it. The jury were instructed if he failed to look to find against him, and their finding in his favor is a finding that he did look, and his testimony furnishes substantial basis for it. There is nothing in his testi-

mony that reflects upon his candor in the least, except this un-reconciled contradiction on a material matter, and probably the jury concluded that his hard hearing had caused him to misunder-stand the question. The questions he answered later to the effect that he did look show he did understand them, for they are not answered in monosyllables, but the answers are responsive to the questions, and show understanding of them. There is evi-dence to justify the jury in finding that he did comply with the requirements to continue to look in both directions until the danger was passed.

But the traveler "is deemed to have seen or heard what is plainly to be seen or heard." *St. Louis, I. M. & S. Ry. Co.* v. *Dil-lard,* 78 Ark. 520. If Mr. Wyatt could have seen the en-gine approaching by looking, he is charged with having seen it, for the courts will not hear a party say that he did not see what was plain to be seen. Therefore his conduct must be measured with his duty. He not only looked and listened before he crossed the belt line track, but he stopped to better see and hear; then, seeing an opening for passage and failing to see or hear an approaching train, he attempted to make the crossing rapidly. There were only 36 feet between these tracks, and he was going rapidly on a down grade. It was his duty to continue to look and listen as he approached the track. He could not see to the east until he cleared the cars on the belt line, and then he had an unobstructed view for only 111 feet east, and a possible view for only 156 feet east. He says he was looking, and the question narrows to whether he could have seen the approaching engine before he got on the main line track. It is apparent that it depends entirely upon how fast the engine was going as to whether it was in sight when he cleared the box cars and ap-proached the main line. He was something like 30 feet from the main line before he could see at all, and his mules much nearer to it and going rapidly; and then, if the engine was more than 111 feet east of the crossing, it was not plainly to be seen, and, if more than 156 feet, not to be seen at all. And, as the evidence shows it was going rapidly, it is at once apparent that his testimony that he looked but could not see is not contradicted by the physical facts. Of course, he could have seen it at some time before it struck him. He puts that distance at only 10 or 12 steps away.

While he must continue to look, yet, as stated in the Dillard case, that does not mean that he must be constantly turning from one direction to the other. It does mean a strict and sensible compliance with this requirement to be vigilant for his own safety; such vigilance as is expected of men of reasonable prudence, care and understanding.

One of appellant's witnesses, while contradicting Mr. Wyatt as to the signals being given, yet strongly strengthens his position that he was looking and yet unable to escape. These excerpts from the witness' testimony explain the situation better than Mr. Wyatt did: "Before he crossed the belt line he stopped and raised up like he was looking for something, and I saw the train would catch him, and I pulled off my cap, and waved it to him, and he didn't pay me any attention, and when he got up beyond the box car where he could see the engine, his horses were on the track, and the engine was in 15 or 20 feet of him, and he commenced hallooing at them. * * * When he ran onto the track, the engine was in about 20 feet of him; and when he got to where he could see the engine, the engine was in about four rail lengths of the crossing." "And his mules were right on the crossing then, were they?" "No, sir, they were not; but with the force he was going, he could not have stopped before he got on the track to save his life."

While the distances given vary from Mr. Wyatt's somewhat, yet both reach exactly the same explanation of the collision, that where and when Mr. Wyatt could first see the engine it was then too late to avoid the collision. Whether Mr. Wyatt exercised the care required of him in discharging the duty enjoined on him presented a question upon which the minds of prudent and reasonable men might draw different conclusions, and hence was proper to be determined by a jury. *St. Louis, I. M. & S. Ry. Co.* v. *Robert Hitt,* 76 Ark. 224.

The judgment is affirmed.

Battle and McCulloch, JJ., (dissenting.) We think that the testimony of the plaintiff shows plainly that he did not look or listen for approaching trains after he crossed the belt track. He could not see up or down the track until after he passed the belt track, and it was his duty to look and listen at a point, before

he went upon the track, where he could see and hear. Stopping to look and listen before he passed the belt track, where the view up and down the other track was so obstructed that he could not see, was not a performance of his duty. According to his own statement of the facts, he was guilty of negligence, and should not recover.