## St. Louis, Iron Mountain & Southern Railway Company *v.* Chamberlain.

### Opinion delivered October 7, 1912.

1. RAILROADS—DUTY OF TRAVELLER AT CROSSING.—It is the duty of a traveller on a highway, before attempting to cross a railroad track, to look and listen for the approach of trains, and, if he fails to do this, he is guilty of such negligence as will preclude a recovery for an injury resulting from such negligence, but, if the evidence is conflicting as to whether he looked and listened, the question is for the jury. (Page 183.)

2. APPEAL AND ERROR—HARMLESS ERROR.—If it was error, in an action against a railroad company for the negligent killing of a traveller at a highway crossing, to permit plaintiff to introduce a rule of the defendant company requiring trains not to block the highway in question, such error was harmless, since the act of May 10, 1907, imposed a penalty upon railroad companies for remaining standing on any highway for more than ten minutes.  (Page 185.)

3. RAILROADS—INJURIES TO TRAVELLER AT CROSSING—EVIDENCE.—In an action against a railroad company for the negligent killing of a traveller at a crossing where at the time of the killing a freight engine blocked the highway and obstructed the vision of an approaching passenger train, evidence of a rule of the railroad company forbidding the blocking of the street in question was relevant.  (Page 186.)

4. SAME—INJURY BY OPERATION OF TRAIN—PRESUMPTION.—Under Kirby's Digest, section 6773, in effect making proof of an injury by the operation of a train *prima facie* evidence of negligence, a plaintiff is entitled to an instruction informing the jury of this statutory presumption, even though there was evidence tending to rebut this presumption and to establish contributory negligence on plaintiff's part. (Page 187.)

5. SAME—INJURY TO TRAVELLER AT CROSSING—INSTRUCTION.—It was not error to instruct the jury, in an action against a railroad company for negligently killing a traveller at a highway crossing, that if deceased, before going on the crossing where he was struck, had looked and listened both ways then it can not be said as a matter of law that he failed to look and listen as required; other instructions having told the jury that it was the decedent's duty to continue to look and listen until he was across the defendant's tracks.  (Page 188.)

6. SAME—INJURY TO TRAVELLER AT CROSSING—INSTRUCTION.—In an action against a railroad company for negligently killing a traveller at a highway crossing, an instruction that, while the fact that there was a freight train standing on the side track, the engine of which partially obstructed the crossing and was making a loud noise, would impose upon decedent a greater degree of care for his own safety, still, if these conditions existed, and defendant was responsible for them,

this would impose upon defendant a correspondingly greater degree of care, was not erroneous as imposing upon defendant a greater degree of care than ordinary care.  (Page 189.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

*E. B. Kinsworthy, R. E. Wiley* and *W. V. Tompkins,* for appellant.

1. It was error to admit Dickson's testimony as to the order by the train master.  There is no proof that the company was negligent; but, if there was, the proof is so flimsy that appellant should have had a verdict, but for this error. The jury may well have argued that the company had violated its own orders.  77 N. W. 433; 135 Ala. 450; 79 N. Y. 1043; 71 Minn. 438; 47 Pa. St. 300; 70 Ark. 179; 68 *Id.* 606.

2. The first instruction is erroneous.  The railroad had the right-of-way, and the fact that deceased was on the track at the time overcomes the statutory presumption of negligence. 95 Ark. 193; 62 *Id.* 235; 95 *Id.* 193; 3 Elliott on Railroads, § 1165.

3. It was error to give the third instruction.  It leaves it to the jury to say what is lawful.  It was deceased's duty to stop, look and listen, and the court should declare the law. 46 Cent. Dig., § 467.

4. The sixth instruction is wrong.  As a matter of law, if deceased only looked once as he went upon the crossing, he was guilty of contributory negligence.  76 Ark. 224; 60 *Id.* 138; 54 *Id.* 431.  The rule that all the instructions must be read together, and that an omission in one may be cured by another does not extend to instructions inherently erroneous and misleading.  74 Ark. 585; 77 *Id.* 201; 75 *Id.* 263; 89 *Id.* 201; 75 *Id.* 263; 89 *Id.* 213; 93 *Id.* 573.

5. The ninth is also erroneous, and the deceased was clearly guilty of contributory negligence.  77 Ark. 164; 94 *Id.* 524; 78 *Id.* 55.

*J. C. Ross* and *H. B. Means,* for appellee.

1. The train master's order was properly read in evidence.  1 Am. & E. R. Cas. 253; 13 *Id.* 49; Acts 1907, 687; 143 S.W. 1070; 2 Thompson on Negligence, § 1692; 3 Ind.

App. 573; 95 N. C. 602; 63 N. H. 623; 74 Iowa, 188; 104 N. Y. 669; 58 Ark. 129; 58 Ark. 374.

2. Failure to sound the whistle or ring the bell is negligence. Kirby's Digest, § 6595; 92 Ark. 437.

3. The testimony justified a finding of negligence, and this question was for the jury. Elliott on Railroads, § 1160; 96 Ark. 311.

4. Even if the train master's order was inadmissible, a case of negligence was otherwise proved, (1) for violating the statute, (2) for failure to ring the bell or sound the whistle and (3) for running its train across Main Street at a negligent rate of speed. The error was harmless. 68 Ark. 606; 74 Ark. 417; 76 *Id.* 276.

5. There is no error in the court's charge. The *prima facie* presumption of negligence applies even to a trespasser. 95 Ark. 194; 94 *Id.* 246; 69 *Id.* 380; 95 *Id.* 193; 76 *Id.* 227. The degree of care is proportionate to the danger to be avoided. 1 Thompson on Negl., § 25; 38 Ark. 357; 95 *Id.* 359.

6. Deceased was not guilty of contributory negligence. 61 Ark. 549; 76 *Id.* 227; 94 *Id.* 246; 97 *Id.* 405.

Frauenthal, J. This is an action instituted by the administrator of Lee Sullivan to recover from the St. Louis, Iron Mountain & Southern Railway Company damages for the pain and suffering endured by him by reason of being struck by one of defendant's passenger trains, which resulted in his death. Sullivan was struck at a public crossing in the city of Malvern, where defendant's tracks crossed Main Street. The depot was situated on the west side of the tracks, and next it was defendant's main track. Just east of that track, and about nine feet therefrom, was a side track. On the east side of both tracks and a short distance therefrom was a hotel, at which Sullivan had boarded for several months just prior to the injury. On the morning of July 15, 1911, Sullivan left the hotel for the purpose of going to the depot, and to do this it was necessary for him to cross defendant's tracks at Main Street. At this time a freight train was standing on the side track between the hotel and the depot, with its engine about one-half or three-fourths the distance across Main Street. Freight cars were attached to the rear end of the engine and extended southward for a distance of probably

three hundred yards. The freight train was taking water at a standpipe located just south of Main Street, and was emitting large quantities of steam and making a great noise. Sullivan proceeded on foot to the crossing at Main Street and across the side track in front of the freight engine, and then stepped on the end of the ties of the main track, when a fast passenger train coming from the south on the main track approached the crossing, and Sullivan attempted to escape by drawing or stepping back, but he was struck by the pilot on the engine, and was so severely injured that he died sev'ral hours later. The trial resulted in a verdict for plaintiff for $1,500 damages. The defendant seeks a reversal of the judgment entered thereon, chiefly upon the grounds (1) that the undisputed evidence shows that Sullivan was guilty of negligence contributing to the injury he received, and (2) that the court erred in admitting certain testimony and in giving certain instructions.

Upon the trial of the case, there was testimony adduced upon the part of the plaintiff tending to prove that the defendant failed to ring the bell or sound the whistle on the passenger train, as required by the statute of this State, when it approached the crossing, and that said train was running at a high rate of speed through the city of Malvern.

While counsel for the defendant do not contend in their brief that there was no testimony sufficient to warrant a finding of negligence on the part of defendant, they chiefly contend that the undisputed evidence shows that the injury which Sullivan received was due to his own contributory negligence. They earnestly argue that if Sullivan had exercised ordinary care in looking or listening after passing the freight engine, and before he stepped upon the ties of the main track, he would have seen the approaching passenger train in the broad daylight, when this injury occurred.

The care that is required by law of a traveller at a public crossing over a railroad track has been repeatedly stated by this court. It has been held that it is the duty of the traveller along the highway attempting to cross a railroad track to look and listen for the approach of trains; and if he fails to do this, he is guilty of such negligence as will preclude a recovery for an injury resulting from the failure to exercise that care.

The traveller must look in both directions, and continue that vigilance until the point of danger is passed; and where the undisputed evidence shows that the injured person had an opportunity to see or hear the approaching train at or before the time of the injury, and that his opportunity was such that he could not have failed to have seen or heard such train in time to have avoided the injury if he had used ordinary care in looking and listening, then the law declares him guilty of negligence barring him of recovery. On the other hand, where the evidence is conflicting, the question as to whether or not a traveller at a public crossing did look and listen for an approaching train before attempting to cross, and whether or not he did continue that vigilance until the point of danger was passed, is ordinarily one of fact for the jury to determine. This is especially so where the moving train is hid from his view by reason of some obstruction. This exception is illustrated by the following cases:

Thus, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hitt*, 76 Ark. 227, a traveller stopped at a railroad crossing and looked and listened, but failed to hear an approaching train, which was making little noise on account of sleet, and he was unable to see its headlight by reason of an obstructing train and the converging rays of an arc light and the headlight of a freight train standing near; and it was under those circumstances held that the question as to whether in attempting to cross the track he was guilty of contributory negligence was properly left to the jury.

In the case of *St. Louis & S. F. Rd. Co.* v. *Wyatt*, 79 Ark. 241, a traveller crossed several tracks at a public crossing and was injured, but there was evidence that he looked and listened before going on the track where he was injured, and on account of obstructions was unable to see the approaching train in time to avoid injury, and was unable to hear it on account of other noises. It was there held that the question as to whether he was guilty of contributory negligence was properly submitted to the jury.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Garner*, 90 Ark. 19, a traveller at a public crossing attempted to pass over a railroad track while on foot. A freight train was standing upon a side track, and the traveller passed over this track

in front of the freight engine. As he stepped on to the main track, a fast passenger train struck him and killed him. In that case there was testimony tending to show that the traveller looked and listened for the approaching train, but that he was prevented from discovering it on account of its rapid approach and the fact that his vision was obscured by the escaping steam from the freight engine. In that case this court said: "We are of the opinion that where the evidence shows, as it does in this case, that the deceased was making some effort to discover dangers on the track over which he was attempting to pass, and that the escaping steam brought about a condition which might have prevented his discovering the danger, even though by the exercise of greater care he might have discovered it, it was peculiarly a question for the jury to determine whether under all the circumstances deceased acted as a prudent person, or whether he was guilty of negligence in attempting to cross under those circumstances."

In the case at bar, the freight train had been standing upon the side track for more than ten minutes just before Sullivan was injured, and during that time its engine was standing upon and obstructing the crossing at Main Street for a distance of from one-half to three-fourths the width of the street. The freight cars on the side track were between Sullivan and the main track, and obstructed the view towards the south, the direction from which the passenger train came. The freight engine was emitting great quantities of steam and making a great noise. There was testimony tending to prove that, after passing in front of the freight engine, Sullivan listened and looked to the south, the direction whence the passenger train was approaching; and we are of the opinion that there was some testimony from which the jury were warranted in finding that the escaping steam from the freight engine obscured his view and prevented his discovering the approaching passenger train. Under these circumstances, we think it was fairly a question for the jury to determine whether Sullivan acted as a prudent person, or whether he was guilty of negligence in attempting to cross the main track.

It is urged that the court committed error in permitting the introduction in evidence of one of defendant's rules or orders providing where its employees should stop its trains

to take water in the city of Malvern.  It appears that just
south of the Main Street crossing there was a standpipe at
which engines took water, and there was also a standpipe
some distance north of this crossing, which was used for the
same purpose.  Some days before the injury there was posted
at the depot at Malvern the following order:  "Train and
engine men.  In taking water at Malvern by north bound
trains, arrange to take water from north standpipe.  This
in order to keep from partially blocking the street crossing,
about which we have received serious complaints from the
mayor and marshal of that town."  It is argued that this
was a private rule of the defendant company, intended simply
for the guidance of its employees, and that it did not fix any
standard of duty which it owed to any traveller at such crossing.

It has been held by some courts that a violation of the
rules prescribed by railroad companies for the management
of its trains and the conduct of its employees tends to show
negligence, and evidence thereof is admissible for that purpose.
10 Enc. Ev. 570, and cases there cited in footnote.  It has
also been held by such courts that such evidence is also relevant
on the question of contributory negligence, in the event such
rules have been published or posted for such a time and so
publicly as that they might have come to the knowledge of
some injured person and were relied upon by him.  Other
courts, however, have held that the law itself fixes the degree
of care which shall be exercised by a railroad company in the
operation of its trains, and that such company could not lessen
the degree of care thus exacted of it by law by the adoption
of any rule or regulation, and that it would be unreasonable
to exact a higher degree of care than that required by law on
account of any such rule or regulation.  *Railroad Co.* v. *Clark,*
136 Ala. 450; *Isaackson* v. *Duluth R. Co.,* 77 N. W. (Neb.) 433;
*Fonda* v. *Railroad Co.,* 71 Minn. 438.

In the present case, however, we do not think it necessary
to pass on this question, for the reason that the purpose of this
rule or order which was introduced in evidence was to prevent
the blocking of street crossings in the city of Malvern, and
this same prohibition is prescribed by the statutes of this
State.  By the act of the Legislature approved May 10, 1907,
it is made a penalty for any railroad company to suffer or to

permit its freight trains to remain standing on any public highway or street for more than ten minutes, and for failure to leave a space of sixty feet across such highway or street. (Acts of 1907, p. 687). This is a public act, designed for the protection of the public, standing upon an entirely different footing from the private rules or regulations of the railroad company. The statute fixes the standard of care by which the conduct of the company must be tested; and a failure to observe that degree of care is negligence, fastening upon the company a liability for a consequent injury.

In the present case the testimony tended to prove that the engine of the defendant's freight train stood upon and obstructed Main Street for more than ten minutes. The above statute forbade this, and the private rule made by the defendant for the government of its employees prescribed no greater care, and required of its employees no greater duty, than that which the statute prescribes. The defendant could not therefore be injured in its legal rights by the introduction of this order. It is, however, claimed that the fact that defendant's engine obstructed the street crossing did not cause or contribute to the injury which Sullivan received, and on this account the order was an irrelevant matter misleading the jury. The fact that the engine was standing upon the street tended, we think, to further obstruct at this crossing the view of the train approaching from the south. The engine was between Sullivan and the direction whence this passenger train was coming, and if the street crossing had been clear of any obstruction he could more readily, and probably would, have seen the approaching train before he crossed over the side track. The situation was made more hazardous by the obstructing engine on the street, and this was doubtless one of the reasons for the passage of the above legislative act and the promulgation of the above order. We are therefore of the opinion that this was a matter that was relevant to the question as to whether or not Sullivan was guilty of contributory negligence.

It is urged that the court erred in instructing the jury in effect that, if Sullivan was struck and killed by a train when he was crossing over defendant's track, this was *prima facie* evidence that it was due to defendant's negligence. It is conceded

that, by virtue of our statute making a railroad company responsible for all damages done to persons and property by the running of its trains (Kirby's Digest, § 6773), a *prima facie* case of liability against the company is made by proof of such injury occurring by reason of the operation of its trains. *St. Louis & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246. It is claimed, however, that the fact that plaintiff was not rightfully on the crossing at the time of the injury, or that he acted without due care, overcame this statutory presumption. It is true that this statutory presumption of negligence could be rebutted by proof that the defendant was free from negligence, or that the plaintiff was barred from recovery by reason of proof of contributory negligence on the part of Sullivan. But neither of these principles is inconsistent with or alters the rule that the negligence of the railroad company will be presumed from proof that the injury itself occurred by reason of the running of its trains. Plaintiff was therefore entitled to an instruction to that effect.

Objection is made to instruction No. 6, which was given in behalf of plaintiff, in which it is in part stated that if Sullivan, before going upon the crossing where he was struck and killed, had looked and listened both ways for the approaching train, "then it can not be said as a matter of law that he failed to look and listen as required by law." It is claimed that under this instruction the deceased would have been free from negligence if he looked and listened at a great distance from the crossing, and then failed to look and listen again before he reached the point of danger. We do not think, however, that this instruction is open to this objection, especially when taken in connection with other instructions given by the court on this question. The instruction manifestly refers to the part of the crossing or track on which Sullivan was struck, and not to any other track or place, and it required him to look and listen in going on and crossing over that track, and therefore in effect required him to look and listen until he passed the point of danger. *St. Louis, I. M. & S. Ry. Co.* v. *Prince,* 101 Ark. 315.

In this connection the court gave the following instruction to the jury: "13. You are told that it was not sufficient for the deceased to have looked for the approaching train

before he got on the track in front of the engine; but it was his duty to have continued to be on guard until he was entirely across the main track of the railroad. And if you believe from the evidence that, after he passed the freight train, he could have looked and listened in time to have avoided the injury, then the plaintiff can not recover in this case." In instruction No. 14, given on behalf of the defendant, the court further instructed the jury: "It is not sufficient for him to look once or even several times; but he must continue to look and listen until the danger is passed. In this case it was not sufficient for deceased to look and listen as he approached the freight engine, but it was his duty to look and listen after he passed the freight engine; but if you believe from the evidence that if he had looked immediately after he passed the freight engine he could have seen the approaching passenger train in time to have avoided injury, the plaintiff can not recover in this case."

The instructions given upon the part of the plaintiff and defendant on this issue were not contradictory, but were in harmony with each other, and correctly announced the law relative thereto.

At the request of the plaintiff the court gave the following instruction to the jury: "9. You are instructed that while the fact that there was a freight train standing on the side track, the engine of which partially obstructed the crossing and was making a loud noise, if such were the facts, would impose upon deceased a greater degree of care for his own safety in approaching said crossing, still if these conditions existed, and the defendant was responsible for them, this would impose upon the defendant company a corresponding greater degree of care in so operating its trains that, if deceased was rightfully using the crossing and in the exercise of ordinary care for his own safety, he might not be injured in so doing."

It is urged that by this instruction a greater degree of care than ordinary care was imposed upon the defendant. This contention, however, we do not think is sound. The instruction itself does not state that the defendant was required to exercise more than ordinary care. In effect, it only says that, if the situation and circumstances were more dangerous, then greater care should be exercised to avoid doing

an injury. But this does not mean that the defendant was required to exercise a greater degree of care than ordinary care. Ordinary care is but reasonable care; and the degree and the exercise of care necessary to constitute it depends generally upon the circumstances of each particular case. Ordinary care has been defined by this court to be such care as a reasonably prudent and cautious person would exercise under similar circumstances. *Bizzell* v. *Booker,* 16 Ark. 308; *Hot Springs St. Rd. Co.* v. *Hildreth,* 72 Ark. 572. The degree of care varies with the circumstances of each case, and necessarily depends upon the hazard or danger. It would not be improper to say that a greater degree of care should be exercised when the situation or circumstances is more dangerous or hazardous. Under such circumstances, a reasonably prudent and cautious person would exercise greater care than when the situation involved less or no danger. The exercise of the greater care under more dangerous and hazardous circumstances would therefore only be the exercise of that care which a reasonably prudent and cautious person would exercise under similar circumstances, and would therefore be at last only ordinary care. And this, we think, is but the meaning and effect of the instruction given.

The rulings made by the court relative to other instructions given and rejected are complained of and urged to be prejudicial. We have examined these, and find that the objections thus urged are similar in effect to those made to the instruction above referred to, and we are of the opinion that they were not erroneous, for the same reasons. On an examination of the entire case, we fail to find any error which calls for a reversal of the judgment. It is accordingly affirmed.