TODD *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered February 3, 1913.

1. RAILROADS—DUTY TO LICENSEE UPON RIGHT-OF-WAY.—A railroad company is not required to give the statutory signals for the protection of travelers at public crossings, to a mere licensee upon its right-of-way; nor does it owe a duty to anticipate that he will go upon the track and to regulate its speed accordingly. (Page 397.)

2. RAILROADS—DUTY TO LICENSEE.—Under Public Act No. 284, p. 275 of the Acts of 1911, placing the burden of proof upon railway companies to show that the duty of keeping a lookout has been performed, a railway company will not be liable for personal injuries to a licensee upon its property, when it appears that the railway engineer saw plaintiff in a place of safety; and the engineer will not be required to anticipate that the plaintiff was unaware of the approach of the train or that he would suddenly attempt to go upon the track. (Page 397.)

3. RAILROADS—NEGLIGENCE.—In an action for damages for personal injuries, when it appears that plaintiff was a mere licensee upon defendant's right-of-way, that the engineer saw plaintiff in a place of safety, and had no reason to anticipate that plaintiff would go upon the track, *Held*, an instruction "that the evidence wholly fails to show any negligence whatever on the part of the defendant causing the injury complained of," is proper. (Page 399.)

4. RAILROADS—CONTRIBUTORY NEGLIGENCE.—When plaintiff, who is ex-pecting the arrival of a train upon the main line, steps suddenly upon the main line track from a place of safety and is injured, his own negligence is the cause of the injury, even though he was prevented from seeing or hearing the approaching train by the headlight and noise of another engine. (Page 399.)

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge; affirmed.

STATEMENT BY THE COURT.

This was a suit by appellant against appellee for damages on account of personal injuries alleged to have been sustained by reason of the carelessness and negli-gence of appellee's agents in running appellee's passen-ger train No. 137 "up to and near the depot at the sta-tion of McGehee, in Desha County, Arkansas, in the night

time, without ringing any bell to give a warning of its approach." And, further, that appellee was negligent "in that there was on the engine during the striking no person, on the lookout for persons or property on the track." And further, "that the train of which the engine doing the striking was a part, was approaching the plaintiff and entering the limits of an incorporated town at an unusual, reckless and unlawful rate of speed."

Appellant alleged that by reason of the carelessness and negligence above set forth he was struck by the train and injured so badly that one of his feet had to be amputated "about the middle, measuring from the heel to the end of the toes, rendering him a cripple for life," etc. He prayed for damages in the sum of $10,000.

The appellee denied the material allegations of the complaint, and set up the defense of contributory negligence on the part of the appellant.

On the issues of negligence and contributory negligence the testimony was substantially as follows:

Appellant testified that the train ran over his foot on the main line of the defendant's railway in McGehee, Arkansas, about 7 o'clock in the evening. Was just above the depot; didn't see the train that hit his foot; was kept from seeing by being blinded by the light of the M. H. & L. train; didn't hear the approach of the train that hit him. No signal was given from the engine which struck him. Witness had started home, north from the depot, just before being struck. Had frequently been over the path before. It was the usual route for going in that direction. While on the way home he thought about his cousin coming in on the train; expected him on the M. H. & L.; so he turned to go back to the depot, and was going down by the side of the M. H. & L. track and got down near to the crossing at the switch and the light from the M. H. & L. train coming in just then blinded him. There was so much fuss he didn't hear anything. When he got down to the crossing he aimed to cross and as soon as he started to cross something knocked him down. Before he started to go back

to meet his cousin he went across the track and looked up both tracks, but saw no train except the one on the M. H. & L. track; didn't see the main line train at all before he was hit; didn't hear anything of it before he was hit; no signals were given from the main line train. He heard the signals on the M. H. & L. train; heard that train blow and heard the ringing. The only blowing and ringing was from the M. H. & L. train. He had an engagement to meet his cousin there that night, which was the real reason he went back down the track. Before he started back down the track he looked in the other direction; saw no train on the main line.

On cross-examination he testified that he didn't know anything particular about the railroad tracks; didn't know the exact time of the trains; had heard both trains were due about that time; had gotten up about the crossing before he saw and heard the M. H. & L. coming and concluded to go back. The M. H. & L. was about 300 yards away, he thought, when he saw it coming. He just walked along steady when he turned to go back; was walking beside the track; does not think the M. H. & L. train passed him; it was close to him, not over five feet from him, when the other train struck him; didn't see them stop for the switch to be thrown; didn't think it stopped. Saw the switchman throw the switch. Was right up above the switch, on his right side, when he threw it. M. H. & L. train at that time was near about at him. The crossing was right by the switch. Had not quite got to the switch when he attempted to cross the main line track. Was not over three or four feet from the track as he walked down from the M. H. & L. When the M. H. & L. train blew it was just as it got down at the mill; that was when he turned. Was about five hundred yards from it, less about twelve yards which he had walked, when he looked up the main line track to see if the train was coming; continued to look all the time and never did see a train on the main line; the lights from the M. H. & L. prevented as he walked down towards the depot. The M. H. & L. train was right close and he

noticed the light shined so bright; didn't get blinded until
the M. H. & L. got near to him.

.There was a path the way he was going, which leads
in the direction of his home; crosses the main line and
the Helena line right about the switch. One runs right
up along the side of the M. H. & L. track; it is a well
defined track. Had been out there lots of times; had
never seen any danger or "keep off" signals out there;
never looked for the signals.

Other witnesses testified that the pathway that ap-
pellant was using that night was used by everybody that.
"goes up that way." Pedestrians use "that path be-
tween those two tracks from the depot north whenever
they so desire at all times, both day and night. That
was the route usually taken." There was no effort on
the part of appellee to stop foot passage between the
tracks.

Witnesses also testified that they observed the main
line train, the one that struck appellant, when it came in
that night, and that it didn't sound the whistle or ring
the bell, that it came in at an unusual rate of speed. One
witness stated that it came in at about twenty-five or
thirty miles an hour faster than it usually comes in. The
tracks of the main line and of the M. H. & L. were about
four feet apart.

One witness on behalf of appellant testified as fol-
lows: "When he comes straight up to the depot, crosses
the main line track and comes up the M. H. & L. track.
There is a crossing there between there and the main
track; goes the same way now, and all the time. It is the
usual route traversed by pedestrians going in that direc-
tion." The path Todd was going on was the one which
witness had described. "It is the usual custom of peo-
ple going in that direction towards his home to use that
path. Does not know of any steps that the company has
taken to prevent it." When witness saw Todd he was
making his way up the track to try to get out of the way
of the train, and just as he looked around he saw him

trying to get out of the way of the other train, and the other train (the main line train) struck him.

On behalf of the appellee, the engineer who was running the engine of the train that struck appellant testified that "it was a common occurrence to see people passing along the tracks while trains were passing in the places indicated." He saw some man there about the places indicated, probably a hundred feet ahead of the engine, something like that, walking between the main track and No. 1, walking in the same direction the train was going, and he was walking in the same direction when he passed out of his sight behind the front end of the engine. He had no way of telling how far it was from the place of the injury to where he first saw plaintiff, thought it was in the neighborhood of where he was lying when he got off of the engine and walked back after he was struck. He was going twelve or fifteen miles an hour when he reached the place where the boy was struck. He had an engine and was not positive whether he had three or four coaches. Could stop a train of that size in about 350 feet when going at that rate of speed. There was nothing unusual in the conduct of this boy; just regarded him as another man, as he so commonly saw men at that place. "It would be about six feet between the cars if there was one on each track, and a person would be safe standing in between the tracks."

This witness further testified, "you can't stand in front of a train and see the train with the headlight burning; you can see the headlight, but not the train. If two trains were running parallel and both had headlights and both were shining in the same direction you could see both headlights. You could not see the train, but the headlights."

The above is substantially the testimony upon which the court instructed the jury as follows:

"Giving all the evidence in favor of the plaintiff its strongest probative force, it wholly fails to show any negligence whatever on the part of the defendant to cause the injury complained of; it does establish the fact that

plaintiff was guilty of contributory negligence. The jury are, therefore, instructed to render a verdict for the defendant.''

Judgment was entered accordingly for the defendant, and the appellant duly prosecutes this appeal.

*X. O. Pindall,* for appellant.

1. If the evidence viewed in the light most favorable to appellant was legally sufficient to sustain a verdict in his favor, the court erred in giving the peremptory instruction to find for the defendant. 93 Ark. 191; 91 Ark. 340, and cases cited.

2. Proof of injury by the operation of a train makes out a *prima facie* case of negligence, and the burden of proof is on the railway company to show that its train operatives were at the time of the accident in the exercise of reasonable care and were not guilty of negligence causing the injury. The failure to keep the constant lookout required by statute is negligence. Kirby's Dig. § § 6773, 6607; 58 Ark. 454; 65 Ark. 237; 63 Ark. 636; 70 Ark. 481; Acts 1911, p. 275.

3. On the question of contributory negligence, it was an issue for the jury. There is not in this case any necessity on appellant's part for excusing a failure to look and listen, for the testimony is clear that he did look and listen, and there was no ground for holding as a matter of law that he was guilty of contributory negligence. 79 Ark. 141; 78 Ark. 55; 116 Mass. 537; 66 Fed. 502; 39 N. J. L. 189; 63 Wis. 152; 77 Wis. 523; 72 Wis. 369; 56 Mich. 122; 105 Ind. 404; 122 Mo. 533; 88 Hun, 596; 84 Me. 117; 132 Mass. 269; 68 Miss. 566.

4. It was not proper for the court to assume that appellant was a trespasser. His status was a question for the jury to pass upon in the light of the evidence and the long standing custom of the public to go upon appellee's premises at the place in question, which the company took no steps to prevent. He was entitled to have the jury say whether, under the conditions, if the train on the main line had given the signals of approach,

he would have attempted to cross, and whether the proved failure and negligence in this regard was the proximate cause of the injury. 77 Ark. 556; 76 Ark. 520; 87 Ark. 628. See also 57 Am. St. Rep. 708, 13 Utah, 91; 82 Am. St. Rep. 475; 117 N. C. 616, 53 Am. St. Rep. 611.

*E. B. Kinsworthy, James C. Knox* and *W. G. Riddick,* for appellee.

1. The court properly directed the verdict. The proof is positive and clear in this case that a proper lookout was kept, that the engineer and fireman both saw the appellant walking along the track in a place of safety, and that he jumped in front of the train when it was within twenty feet of him. 84 Ark. 275. The lookout statute as amended by Act 284, Acts 1911, p. 275, changes the law only to the extent that when it is shown that *no lookout was kept,* the injured party when guilty of contributory negligence may exonerate himself from the legal effect thereof by proving that *had a proper lookout been kept* his peril could have been discovered in time to have avoided the injury notwithstanding his contributory negligence. There is neither allegation nor proof here of discovered peril. 62 Ark. 159; 97 Ark. 560; 78 Ark. 55.

2. If appellant looked and listened all the time while walking along the track, it was nevertheless his duty to look and listen again before attempting to cross; and he was under the greater duty to exercise care and caution by reason of the fact that the train was due, and if he was blinded by the light from the other engine so as to prevent his seeing the approaching train, he was under the greater duty to listen for it, and the more negligent in failing to do so. 69 Ark. 134; 62 Ark. 159.

3. A railway company owes a trespasser no duty save to refrain from injuring him after discovering his peril. *Supra;* 95 Ark. 190; 62 Ark. 235; *Id.* 245; 94 Ark. 527; 77 Ark. 398; 93 Ark. 24; 90 Ark. 278. Even if appellant was a licensee, appellee owed him no affirmative duty of care. 95 Ark. 190.

Permission sufficient to constitute one a licensee with the right to use part of a railroad track will not be inferred unless there be a notorious and constant use, and consent thereto either express or implied on the part of the company.   33 Cyc. 758-761; 83 Ark. 300.

WOOD, J., (after stating the facts).  Viewing the evidence in the most favorable light for the appellant, the most that can be said of it is that it warranted a finding that he was a licensee on appellee's right-of-way on the path that he was traveling when he attempted to cross at the time he received the injury of which he complains.   As such licensee, the only affirmative duty the appellee owed him was to keep the lookout required by Act No. 284 of the Acts of 1911, page 275.   The railway company did not owe him the duty to give the statutory signals required for the protection of travelers at public crossings on the highway.   Nor did it owe him the duty of regulating its rate of speed so as to anticipate his presence upon its track at the time he was injured.

This case is unlike the cases where parties injured are upon the railway company's track or right-of-way not only by permission but upon the implied invitation of the company.   In such cases the railway company owes the duty of exercising ordinary care to avoid injury.   See *Ark. & La. Ry. Co.* v. *Graves,* 96 Ark. 638, and cases cited.   Nor is it like the cases of travelers at a public crossing, where the right to use the public highway is not by permission of the company, but by virtue of the law.   Such are the cases of *St. Louis, I. M. & S. Ry. Co.* v. *Chamberlain,* 150 S. W. 157, 105 Ark. 180; *St. Louis, I. M. & S. Ry. Co.* v. *Carr,* 94 Ark. 246; *St. Louis, I. M. & S. Ry. Co.* v. *Garner,* 90 Ark. 19; *St. Louis & S. F. Rd. Co.* v. *Wyatt,* 79 Ark. 241; and *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 227.   In all such cases the railway company owes to the traveler the duty of exercising care to avoid injuring him.   But the present case is differentiated from the above by reason of the fact that the appellant here was not upon the track of the railway company at the time of the injury by reason of

any invitation of the company, either expressed or implied. He was not about any business pertaining to the company, and, as already stated, he was a mere licensee.

A licensee takes his license with its concomitant perils. *Ark. & La. Ry. Co.* v. *Sain,* 90 Ark. 278; *St. L., I. M. & S. Ry. Co.* v. *Tucka,* 95 Ark. 190.

Therefore, the allegations of negligence as to failure to give the warning signals and the unlawful rate of speed alleged in the complaint are not sustained by the evidence, and the only remaining question is, was the appellee negligent in failing to keep the lookout required by the act of 1911, *supra*.

There is no testimony tending to prove that the servants of appellee in charge of the train that injured appellant were not keeping the constant lookout required by the above statute. On the contrary, the undisputed evidence of the engineer who was running the train at the time shows that he was keeping the lookout, and that he discovered the appellant "one hundred feet ahead of the engine, walking between the main track and No. 1, the same direction the train was going, and walking in the same direction when he passed out of sight behind the front end of the engine." The undisputed evidence therefore brings the case within the rule announced by this court in the case of *St. Louis & San Francisco Ry. Co.* v. *Ferrell,* 84 Ark. 275, where we said: "There is no evidence of failure to keep a lookout."

The lookout that was being kept discovered the appellant, but at the time he was discovered he was in a place of safety, and therefore no duty devolved upon the appellee to do anything more than it was doing. It could not reasonably anticipate that appellant had not discovered the approach of the train, or that he would suddenly attempt to pass in front of the moving train, thus endangering his life.

We further said in *St. L. & S. F. Ry. Co.* v. *Ferrell, supra:* "If a lookout was being kept, the engineer and fireman would have seen a party of gentlemen running down the west track. They were in perfect safety, and

it is evident from the testimony of Mr. Bell, that at the time when he crossed the main line, and at the time when Mr. Ferrell attempted to cross, it was so shortly before the passage of the train that nothing could have been done in the way of checking or stopping it. A careful watch, or a failure to watch, could not have influenced the result.''

So here, the disappearance of the appellant from the path where he was traveling and his going upon the track in front of the moving train was so sudden that it was impossible, under the undisputed evidence, for the servants of the appellee to have done anything that could have prevented the injury. The proof shows that the train could not have been stopped in less than about 350 feet.

The act of 1911, *supra,* places the burden of proof upon the railway company to show that the duty to keep the lookout had been performed. The undisputed evidence shows that appelle has performed that duty. Therefore, we are of the opinion that the court was correct in instructing the jury that ''the evidence wholly fails to show any negligence whatever on the part of the defendant causing the injury complained of.''

Moreover, we are of the opinion that, even if it be conceded that the issue of the alleged negligence of the appellee was for the jury, still the uncontradicted evidence shows that appellant was guilty of contributory negligence. The train on the main line was due about the time he was injured; appellant was expecting it; he had looked and listened, and had neither seen, nor heard it; but the light from the other train blinded him so that he could not see the main line train, as he states. If the light from the other train, and the noise, by reason of the running thereof, were so great that he could neither see nor hear the main line train, then, by reason of these circumstances, it was all the more incumbent upon him not to go upon the main line track where he knew that about that time a train was due to arrive. He

was in a perfect place of safety in the path where he was traveling, and had he remained in such path would have escaped injury. In such a situation it must be held that the injury caused by his suddenly leaving this path and placing himself in front of the moving train was the result of his own negligence. *Martin* v. *Little Rock & Ft. S. Ry. Co.,* 62 Ark. 159.

If the circumstances, as appellant's own testimony tends to show, were such as to render both his senses of sight and hearing unavailing for his protection, then the track where a train was at that time expected was a reminder of danger, and in his leaving his place of safety and going into this place of danger he assumed all the risk, and his own negligence in so doing was the proximate cause of the injury that befell him. See *Martin* v. *Railway, supra.* The judgment is affirmed.