JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY *v.* WRIGHT.

Opinion delivered March 29, 1926.

1. MASTER AND SERVANT—SECTION HAND RIDING ON MOTOR CAR.—A section hand riding home from work on one of the master's motor cars was entitled to be treated as an employee.

2. NEGLIGENCE—CONCURRING ACTS.—Where the negligent acts of two persons concur to produce an injury, the author of either negligent act is liable to the injured party for the damages sustained.

3. MASTER AND SERVANT—CARE FOR SERVANT'S SAFETY.—Where a section hand was riding home from work on one of the master's motor cars, it was the master's duty to exercise ordinary care for his safety while carrying him home from work, and it was also its duty to make reasonable inspection to see if the motor car was in safe condition.

4. RAILROADS—CARE IN OPERATION OF MOTOR CAR.—While the statutory duty of keeping a lookout applies only to the operation of trains, and not to motor cars operated on a railway track, it is the duty of persons operating such cars to maintain a lookout when approaching a public crossing.

5. MASTER AND SERVANT—NEGLIGENCE—JURY QUESTION.—Where defendant's employee was injured in a collision between an automobile and the motor car on which plaintiff was riding home from work, and the jury might have found from the evidence that

the accident was caused by the negligence of the driver of the motor car or by the concurring negligence of the drivers of the motor car and automobile, the case was properly submitted to the jury.

6. MASTER AND SERVANT—NEGLIGENCE IN OPERATION OF MOTOR CAR.— It was proper to instruct the jury, in determining whether the driver of defendant's motor car failed to keep a lookout for approaching vehicles at a public crossing, to consider the nature of the public crossing and all of the surrounding circumstances as shown by the evidence.

7. MASTER AND SERVANT—INSTRUCTION AS TO CONTRIBUTORY NEGLIGENCE.—It was not error to instruct the jury that plaintiff, riding home on defendant's motor car, was required to exercise reasonable care for his own safety, as the law does not require of him the exercise of the highest degree of care for his own safety.

8. DAMAGES—PERMANENT INJURIES—INSTRUCTION.—Where plaintiff, sixty years old, was confined to his bed for five months after the accident, had a leg crushed and a foot mashed, had his collarbone broken and a depression in his head, and a medical witness testified that, in his opinion, plaintiff's injuries were permanent, the question of permanent injuries was properly submitted to the jury.

9. DAMAGES—EXCESSIVENESS OF AWARD.—Upon proof of permanent injuries to plaintiff, and that he suffered excruciating pain for several weeks, that he had an expectancy of thirteen years and had been earning $2.25 per day, an award of $5,000 was not excessive.

Appeal from Craighead Circuit Court, Lake City District; *G. E. Keck,* Judge; affirmed.

STATEMENT BY THE COURT.

This is an action by J. W. Wright against the Jonesboro, Lake City & Eastern Railroad Company to recover damages for personal injuries received by him while riding upon a motor car from work, which was being driven by another employee of the company. Wright and six other employees were riding on the motor car from their place of work on the section to their homes in Blytheville, Arkansas. The injury to Wright was caused by a collision between the motor car and an automobile at a public crossing in Blytheville.

It appears from the testimony of J. W. Wright and of another witness for him, that he was working on the

section gang for the railroad on the day of the accident. He was sixty years of age, and had been working on railroads most of his life. The section gang was returning home from work on the motor car, which was driven by Charlie Chandler, one of the section hands. The railroad runs through the Chicago Mill yard about a quarter of a mile in the city of Blytheville. The car was going between 15 and 20 miles an hour as it approached the crossing at Twenty-first Street, in the city of Blytheville. Just before the car got to the crossing, the plaintiff saw an automobile approaching the crossing and told Chandler, the driver, to be careful. The driver of the motor car never attempted to stop it. The plaintiff saw an automobile pass over the crossing ahead of the motor car, but did not see the automobile which collided with motor car. The plaintiff was watching the shovels and tools on the motor car, and holding them in place.

Another one of the section hands testified that the motor car had defective brakes on it, and that when it was going fast it would take about three rail lengths to stop it. The motor car did not check its speed after it turned the curve and approached the public crossing at which the accident happened. When the motor car got about forty feet from the crossing, the witness saw an automobile about fifty yards south of the track, going towards the crossing at a speed of between 15 and 20 miles an hour. It looked like it might reach the crossing about the time the motor car did, and the section hands commenced hallooing and waving their hands for him to stop. Both wheels of the automobile struck the motor car near the middle when it was about the center of the crossing. All of the section hands on the motor car, except the witness, were injured, and the plaintiff was hurt worse than any one. According to his testimony, the speed of the motor car was between four and six miles an hour.

Other witnesses testified that the motor car was running between 15 and 20 miles an hour, and that the automobile was running at the rate of between 15 and 20 miles an hour.

W. D. Chamblin, the owner of the Ford touring car which collided with the motor car of the railroad company, was also a witness for the plaintiff. According to his testimony, the automobile was about five months old, and in good condition. An automobile passed over the crossing just ahead of him, and, just as he started to drive his car over the crossing, the motor car shot out in front of him from the Chicago Mill yard, and struck his car. He did not see the motor car before it got on the crossing. The motor car was running about 20 miles an hour. It was within three feet of him when he saw it. His brakes were in good condition, but he saw the motor car too late to avoid a collision. The motor car was running faster than his automobile. It was getting dark when the collision occurred. It had been raining, and all of the curtains were up on the automobile. The driver of the automobile does not think that he was going more than 15 miles an hour.

Evidence was adduced by the plaintiff showing the character and extent of his injuries, which will be stated under an appropriate heading in the opinion.

The defendant adduced evidence tending to show that the accident was caused by the negligence of the driver of the automobile.

From a verdict and judgment rendered against it, the defendant has duly prosecuted an appeal to this court.

*Eugene Sloan,* for appellant.

*Sam Costen* and *Wils Davis,* for appellee.

HART, J., (after stating the facts). It is first insisted that the judgment should be reversed because the court erred in not directing a verdict for the defendant. We cannot agree with counsel in this contention. At the outset it may be stated that the plaintiff was a section hand, and riding home from work on one of the defendant's motor cars, and was entitled to be treated as an employee at the time the injury occurred. *St. Louis S. F. R. Co.* v. *Barron,* 166 Ark. 641, and *Arkansas Land & Lbr. Co.* v. *Cook,* 157 Ark. 245.

It is also the settled rule of law in this State that, where the negligent acts of two persons concur to produce an injury, the author of either negligent act is liable to the injured party for the damages sustained. *Jenkins* v. *Midland Valley Rd. Co.*, 134 Ark. 1; *Bona* v. *Thomas Auto Co.*, 137 Ark. 217; *Arkansas Land & Lumber Co.* v. *Cook*, 157 Ark. 245; and *Johnson* v. *Mo. Pac. Rd. Co.*, 167 Ark. 660.

According to the evidence for the plaintiff, he was going home from work in a motor car of the defendant, and was still in its service, under the authorities above cited. It was the duty of the defendant to exercise ordinary care for his safety while carrying him home from work, and it was also its duty to make reasonable inspection to see if the motor car was in safe condition. In this connection it may be stated that, while the statutory duty of keeping a lookout applies only to the operation of trains, and not to motor cars operated on railway tracks, it is the duty of persons operating such cars to maintain a lookout when approaching a public crossing. *Cook* v. *Mo. Pac. Rd. Co.*, 160 Ark. 523. Bearing in mind these well-settled principles of law, the jury might have found that the driver of the motor car failed in his common-law duty to keep a lookout for vehicles which he might anticipate would cross the railroad track at a public crossing, and the jury might have found under the evidence that the driver of the motor car was guilty of negligence in this respect, which caused the accident, or that the accident was caused by the concurring negligence of the driver of the motor car and of the driver of the automobile. Therefore the evidence was legally sufficient to support the verdict.

It is next insisted that the court erred in giving instruction No. 2, which reads as follows:

"If you find from a preponderance of the evidence that, at the time of the collision and injury, the operators in charge of said motor car were running same at an excessively high and reckless rate of speed, taking into consideration the nature of the road crossing that they

were approaching and all of the circumstances and conditions as they existed there at that time, then the defendant would be guilty of negligence; and if you further find that such negligence was the proximate cause of the injury, your verdict should be for the plaintiff, unless you find that the plaintiff was guilty of contributory negligence as hereinafter defined, in which event your verdict should be for the defendant.''

Special objection was made to the following: ''taking into consideration the nature of the road crossing that they were approaching and all of the circumstances and conditions as they existed there at that time,'' and counsel for the defendant asked that this portion of the instruction be stricken out, because it permitted the jury to exercise its opinion without testimony in determining what were the circumstances and conditions existing there at the time. We do not agree with counsel in this contention. In deciding whether the driver of the motor car failed in his common-law duty to keep a lookout for approaching vehicles at the public crossing, it was proper for the jury to take into consideration the nature of the public crossing and all of the surrounding circumstances as shown by the evidence. In no other way could they properly decide whether or not the driver of the motor car had failed in his common-law duty in the matter of keeping a lookout for vehicles approaching the public crossing.

It is next insisted that the court erred in giving instruction No. 9, which reads as follows:

''It was the duty of the plaintiff to exercise reasonable care for his own safety; that is, the same degree of care that an ordinarily reasonable, prudent and cautious man would have exercised under the same circumstances; and if you find from the evidence that the plaintiff failed to exercise such reasonable care for his own safety, he would be guilty of negligence, and if you find that such negligence caused or contributed to the injury, then that would be such contributory negligence as would prevent him from recovering in this case, and your verdict should be for the defendant.''

Counsel for the defendant made special objection to this instruction, because it told the jury that the plaintiff was required to exercise only reasonable care for his own safety, when it should have told the jury that it was his duty to exercise the highest degree of care for his own safety under the circumstances.

There was no error in giving this instruction. The plaintiff was being carried home on the motor car, and under the authorities cited above it was the duty of the defendant to exercise ordinary care in the operation of the motor car. In other words, whether Chandler, the driver of the motor car, was negligent or not depended upon whether he, by the exercise of ordinary care, might have seen and anticipated the approach of the Ford touring car. It was likewise the duty of the plaintiff to exercise ordinary care for his own safety. According to his testimony, he saw an automobile, and told Chandler, the driver of the motor car, to be careful. He was not required to exercise any higher degree of care for his own safety than the defendant was required to exercise in the discharge of its duty to him.

It is next insisted that the court erred in refusing to give instruction No. 1 at the request of the defendant, which reads as follows: "You are instructed that there is not sufficient evidence to show or prove that the plaintiff's injuries are such that will result in a permanent injury, and you will therefore not consider this item in arriving at the amount of damages that you may fix if you should find that the plaintiff was damaged."

There was no error in refusing to give this instruction. According to the testimony of the plaintiff, he was sixty years of age, and was confined to his bed about five months after the accident happened. One leg was crushed, one foot was mashed or knocked in, and his collar-bone was broken. His leg was broken between the knee and the ankle. He had been injured seven months at the time he testified, and there was still a depression in his head. His heel was still sore, and he was walking on crutches.

According to the testimony of Dr. F. B. Elliott, the plaintiff was in the hospital six weeks after he was injured, and seemed to suffer a great deal. He examined the plaintiff a few days before the trial, and he seemed to be suffering at that time. The plaintiff is too old to get a sufficient union and sufficient use of the muscles to get about like he once did. The plaintiff will be in a weakened condition, and the witness did not believe that he would ever walk without the aid of crutches. He believed that his injuries were permanent.

This testimony was sufficient to warrant the court in submitting to the jury the question of permanent injury.

Finally it is insisted that a verdict for $5,000 is excessive. The medical and hospital bills of the plaintiff amounted to something like $350. He was making from $2.25 to $2.50 per day, and in addition to the fact that he was permanently injured, as detailed above, it may be said that the testimony of the plaintiff and that of his physician showed that he suffered excruciating pain for several weeks. As the plaintiff expressed it, he suffered death for four weeks. He was still suffering pain at the time of the trial, which was seven months after he received his injuries. His life expectancy was 13.53 years. Dr. Elliott testified that the plaintiff seemed to suffer about as much as a man could, and that this continued for a period of weeks. Under these circumstances it can not be said that the verdict of the jury is excessive.

It follows that the judgment will be affirmed.