ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. UNDERWOOD.

Opinion delivered April 1, 1905.

1.  STREET—RIGHTS OF PEDESTRIANS.—It was not error to assume that one who is walking in a public street is not a trespasser.  (Page 614.)

2.  SAME—DUTY OF RAILROAD.—To one walking along a public street the railroad company owes the duty to employ reasonable means and to exercise reasonable care to avoid injuring him.  (Page 614.)

Appeal from Monroe Circuit Court.

GEORGE M. CHAPLINE, Judge.

Affirmed.

### STATEMENT BY THE COURT.

On the 28th day of October, 1902, the appellee, a minor, by his next friend, A. J. Hughes, instituted this action, and alleged that on the 4th day of July, 1902, in the town of Brinkley, an employee of the appellant negligently threw a trunk out of its car, which fell on the appellee's foot, without his fault; that he was passing over Memphis avenue, upon which the appellant's track is laid. The trunk fell with such force as to mash his foot, and he suffered great pain therefrom, and asks that he be awarded $1,000 damages.

The appellant answered; denied negligence or carelessness on the part of its employees; denied that the trunk fell or struck the appellee, or that it mashed his foot; denied that appellee was passing Memphis avenue, as alleged in the complaint; denied that the appellee suffered any pain, or that he received any injury, at the time mentioned, or at any other time.

A. J. Hughes testified as follows: The Lonoke train had arrived; we were going to it; we were at the end of the Cotton Belt depot; I intended to go to Lonoke, and the children were to remain in Brinkley. While passing the Cotton Belt depot, the train arrived; they were unloading baggage from the baggage car the trunk was thrown on a truck, and it bounced over, and fell to the ground eight or ten feet from the car, and struck

the appellee; knocked him against the banister, and injured his foot and ankle; it was a bad sprain; flesh all torn off his foot; he suffered a good deal of pain, and suffered for a month when he would walk or stand upon it all day. He hobbled around, but it hurt him; he wore his shoes off and on probably a week after the injury, but did not wear them regularly for a month. Witness was up with the appellee during the night for a couple or three weeks after the injury. He did not labor. The Cotton Belt arrived at 3 or 4 o'clock in the afternoon. Witness and the appellee were going to the Choctaw depot. The train was there. "We were going to the Cotton Belt train. I suppose they call it a depot, alongside of the train. We were going north on the Cotton Belt."

Appellee testified that they were going by the Cotton Belt depot; in passing a baggage car the baggageman threw a trunk out on the truck, and it fell from the truck, and hit his left foot; hit his toe, and struck his ankle. His uncle put some liniment on it. He suffered from pain a good deal afterwards; ankle swelled. Appellee was earning from 50 to 75 cents a day; did not work for a month; bought two bottles of liniment; pretty bad hurt; broke skin a little at the end of the toe; slight scar there. Baggageman was fixing to throw the trunk out, he turned his head, and it struck his foot as he made the step. Witness went about the town of Lonoke shortly after the accident. The appellee is fifteen years old.

Maggie Underwood testified. She is a sister of appellee; she was with him when he was hurt. He suffered a great deal; they went to Brinkley on the 4th of July; they were going north; walking pretty fast; there were a great many people on the walk; the appellee was behind and in passing the baggage car the trunk was thrown on a truck, and it bounced over, and hit appellee's foot; knocked him over against some irons. Witness was in front of "Boss" when he got hurt; they were going to the Choctaw depot with their uncle to tell him goodbye.

Chas. Madison testified that he supposed the boy was standing about the trucks; the train porter threw the trunk out; it was witness' duty to catch it. One of the trunks was a little too swift, and it went over the truck, and struck the boy. The

boy grabbed his leg, and commenced to cry. It was a medium-sized trunk.

A. M. Finney testified he remembered the trunk striking the boy; thought the boy was standing still when he saw him. When the trunk was thrown out of the baggage car on to the truck, he and the porter attempted to catch it, but it was a little too swift; he could not hold it, and it struck the boy's foot. The truck was very close to the car. The trunk struck truck, one corner of it, and fell on the platform. He saw the boy standing near the truck before the trunk came out of the car.

Sid Simpson testified he was marshal of the town of Lonoke; he saw the appellee on the streets of Lonoke frequently during the month of July, 1902, and he never saw anything wrong with him at all. He saw him very frequently; did not remember if he saw him every day or not, but he was not limping when he saw him. Never heard any complaint about the accident.

J. M. Cobb testified he was a resident of Lonoke; knew the appellee; could not tell precisely when he left there, but he saw him in the month of July every day, or perhaps two or three times a day, walking up and down the streets. He saw no evidence of injuries to the boy's foot. He noticed his foot wrapped up; sometimes he had it wrapped up for two or three days; he went about as usual; could detect no difference in his walking. The appellee and his next friend, Mr. Hughes, worked around Lonoke at common work. He thought he paid him 50 cents a day.

R. J. Hawkins, of Brinkley, testified he saw the appellee on the 4th of July walking around after the accident; he limped a little; did not think his foot was bruised to amount to anything; boy had on his shoes and stockings.

The court then gave the following instructions:

"The court instructs the jury that if you find from the preponderance of the evidence that on July 4, 1902, a baggage-man, while in the employ of the defendant, on defendant's train, in handling a trunk in defendant's baggage car, so negligently and carelessly handled said trunk that through said negligence

and carelessness the trunk fell on plaintiff's foot and caused the injury complained of, you will find for plaintiff in such sum as will compensate him for the injury sustained and pain suffered, as shown by the proof, not exceeding the sum of $1,000.

"The jury are instructed that if they find from the evidence that the plaintiff was standing upon the platform of the defendant's [depot] in front of the baggage car · from which its employees were handling trunks, and that they used ordinary care in the handling of them, and that one of the trunks accidentally overshot the trucks, and struck the plaintiff, he cannot recover for such injuries."

The defendant asked the court to give the following instructions: "The jury are instructed that if they find from the evidence that the plaintiff, Boss Underwood, was standing in front of the car from which the employees of the company were handling trunks, and that one of the trunks, in removing them from the car, accidentally overshot the trucks, which were used for handling them, without willful or wrongful intention on the part of such employees to inflict an injury upon the plaintiff, or any one else, then the defendant would not be liable for such injuries, and your verdict should be for the defendant."

This the court refused. The verdict was for $500, and judgment accordingly.

*S. H. West* and *J. C. Hawthorne,* for appellant.

The evidence is insufficient to sustain the verdict. 48 Ark. 491. The appellant is not liable for the injury complained of. 45 Am. & Eng. R. Cas. 593; 33 *Id.* 500; 28 *Id.* 157; 29 Oh. St. 364; 8 Am. & Eng. R. Cas. 544.

*C. F. Greenlee,* for appellee.

The injury was the result of a lack of ordinary care on the part of appellant's employees. 16 Hun, 415; Whar. Neg. § 54; 98 Mass. 577; 53 Ark. 381; 56 Ark. 387.

WOOD, J., (after stating the facts.) 1. The evidence is fully set out. Giving the appellee the benefit of its utmost probative force, which is the rule here, we do not feel warranted in saying that the verdict is excessive.

2. The contention that the instruction was erroneous in assuming that appellee was rightfully in the place where he was injured, and that appellee could not recover unless the proof showed gross and wanton negligence on the part of appellant, is not correct. The complaint alleges "that the accident did not occur through any fault of his (plaintiff), *but that he was passing* along Memphis avenue, through which defendant's track is laid. The appellant denied that plaintiff "was passing Memphis avenue, through which defendant's track is alleged to be laid." It will be observed that appellant does not deny that its track was laid through Memphis avenue. Therefore it appears that appellant's track was laid on Memphis avenue. The proof shows that Underwood was passing along by the side of the train, by the baggage car. We gather from the evidence that appellee, Underwood, was walking on the ground or walk by the side of the train and by the baggage car from which the trunk was thrown. His sister, who was near them, says: "There were a great many along, and my brother was right along behind," etc. The allegations of the complaint and the evidence show that at the time of his injury appellee was upon Memphis avenue, a public thoroughfare. "An avenue is a passage; a way or an opening for entrance into a place; any opening or passage by which a thing is or may be introduced or approached; 2, a roadway; 3, a street": Century Dictionary. "Avenue", "a broad street": Webster's Dictionary. "A street": March's Thesaurus of the English Language. "A street is a road or public way in a city, town, or village:" Elliott, Roads and Streets.

In *St. Louis, I. M. & S. Ry. Co.* v. *Neely,* 63 Ark. 636, the railway company was operating and moving one of its freight trains on and along Elm street in the town of Warren. At this time Neely was returning from his residence to his office on the same street. While the freight train was passing him, a car door fell upon him from its place in a car in the train, and inflicted an injury. In that case we said: "Here the appellee was upon a public street at the time he was hurt. He was no trespasser. The railroad company owed him the duty to employ reasonable means and exercise reasonable care to avoid injuring him." This doctrine rules the case at bar, rather than the principle invoked by appellant that the railway company owed

appellee no duty except to use ordinary care not to injure him after having discovered his place of peril, or, in other words, that it was the duty of the railway company only to avoid such gross and wanton negligence as was equivalent to a willful or intentional injury. The rule established by the authorities cited by appellant is applicable only in the case of a trespasser. It is not applicable to the undisputed facts of this record. The court did not err, therefore, in assuming that appellee was rightfully in the place where he was injured, and in refusing the request of appellant for an instruction to the effect that appellant was not liable unless its employees inflicted the injury upon appellee with "willful and wrongful intention."

Affirm.