MISSOURI & NORTH ARKANSAS RAILROAD COMPANY *v.* BRATTON.

Opinion delivered February 17, 1908.

1. RAILROADS—PERSON KILLED ON TRACK.—Where a town was situated at some distance from the railway station, and passengers going to and from such station were accustomed to use the roadbed for a short distance, the jury were warranted in finding that plaintiff's decedent, who was killed by a train while walking on the defendant's track from the station to the town, was not a trespasser. (Page 331.)

2. SAME—WHEN CONTRIBUTORY NEGLIGENCE QUESTION FOR JURY.—Where the circumstances were such that one of ordinary prudence might not expect a train to pass at that moment, it is a question for the jury to determine whether the plaintiff's decedent was guilty of contributory negligence in going upon defendant's track without stopping to look and listen. (Page 331.)

Appeal from Searcy Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

### STATEMENT BY THE COURT.

This suit was brought by Benjamin Bratton, Jr., as administrator of the estate of Benj. Bratton, Sr., to recover of appellant damages for the alleged negligent killing of Benj. Bratton, Sr., in operating its passenger train. The negligence alleged was the use of a boiler and engine that were "badly out of repair"; that the engineer and fireman failed to keep a proper lookout; that they failed to "sound a whistle, ring a bell, or give any kind of alarm to passengers on the track of the approach of the locomotive." The complaint alleged that the appellant had "at all times allowed its passengers and the public generally to use its tracks, and road, in going to and from the

town of Leslie to its depot." And set forth the manner of the injury as follows:

"That on the 6th day of November, 1905, Benjamin Bratton, the deceased, was a passenger on defendant's train, and that he, with another passenger, left the depot at Leslie, and started walking down the track, as was the custom, in the direction of the town of Leslie, being immediately behind the train until it backed off on a 'Y'; and then the deceased, with others, kept on down the track when the locomotive propelling said train immediately, and without keeping a proper lookout, and with a poor and insufficient headlight, and with a locomotive and engine badly out of repair, came back on the main line and followed on after him," knocking him down, and severely injuring him; that Bratton "suffered most excruciating pain, and died as a result of his injuries." Damages were laid at $25,000.

The answer of appellant admitted that Benjamin Bratton was killed by its train, but specifically denied each and all the allegations of negligence. The appellant admitted that its tracks were used by passengers, but denied that it consented to such use, and averred that there was ample room, consisting of a public highway by the side of its tracks, where passengers would be entirely out of danger from its trains. Appellant averred "that it was its invariable custom, when its train arrived at Leslie, to give passengers time to debark, then to move train down track toward Leslie, so as to back on to the 'Y', and, after cutting loose the cars from the engine and tender, then to move its engine and tender down to the water tank, there to take water as a daily custom; but defendant avers that it moved down slowly, not exceeding a rate of four miles per hour, during all of which time it was ringing the bell, the same being the usual, customary, and proper warning to persons on the track." Appellant denied that Bratton suffered great bodily pain, but averred that he was rendered unconscious by the shock, and died therefore without pain. Appellant then set up contributory negligence on the part of Bratton in "going upon the track at a time when he knew that the train was due to pass over it; and that he placed himself immediately in front of the engine, and so close thereto that it was impossible for the servants in

charge of the train to discover his danger; and averred that the said servants did not discover the intestate in time to avoid the injury by the use of all the reasonable means within its power." Appellant therefore denied liability.

After the evidence was adduced and the jury was instructed, it returned a verdict for appellee in the sum of $2,500. Appellant moved in arrest of judgment, alleging "that the facts set forth in the complaint do not constitute a cause of action."

Motion for new trial was overruled, and this appeal was duly prosecuted. Other facts stated in opinion.

*Crump, Mitchell & Trimble,* for appellant.

1. Taking into consideration the evidence, the nature of the wounds, the extreme old age of the deceased and the short time he lived after the injury, there could have been no conscious suffering. No man could have received such a shock and retained consciousness.

2. The 4th instruction was erroneous. It does not appear that there was a general custom on the part of persons going to and from defendant's depot to use its tracks as a pathway, nor that it had existed for any length of time, nor that the public had been invited so to use the tracks. 46 Ark. 522; 76 Ark. 11; 54 Ark. 431; 56 Ark. 271; *Id.* 457; 57 Ark. 461; 57 Fed. 921. Appellant owed no special duty to the deceased on account of his age or feeble condition, unless the train operatives had seen him in time and had known his condition. Cases *supra.* Deceased was a trespasser on the right of way. 55 S. W. 921; 26 S. W. 414; 3 Elliott, Railroads, 1253; 66 Ark. 494.

3. In the light of the evidence, deceased was guilty of such contributory negligence as to preclude recovery. 64 Ark. 368; 3 Rapalje & Mack's Ry. Dig. 198. And the court erred in giving its instruction 2. 64 Ark. 364. There is no evidence on which to base it. The trainmen testified that they did keep a lookout and did not see deceased. Notwithstanding the presumption of negligence arising from the killing by the company's train on its track, there can be no recovery if the deceased was guilty of contributory negligence in being on the track, unless his situation was discovered by the trainmen in time to avoid injuring him. 69 Ark. 380. And the burden is

on plaintiff to show that they did discover him in time to avoid the injury. 77 Ark. 401. See, also, 76 Ark. 10; 92 Ala. 270; 36 Ark. 46; 61 Ark. 549; 65 Ark. 235; 69 Ark. 134; *Id.* 617; 52 Ark. 120; Elliott on Railroads, § 1166.

*Ulysses Bratton* and *H. H. Myers,* for appellee.

1. Where all the evidence is not brought up in the record, this court will presume that the verdict was correct, and that the evidence was sufficient to sustain the verdict. 75 Ark. 571; 67 Ark. 287; 64 Ark. 609; 63 Ark. 513; 67 Ark. 464; 72 Ark. 185; 74 Ark. 88; 57 Ark. 459; 45 Ark. 240; 43 Ark. 451; 11 Ark. 125.

2. The killing of deceased by appellant being admitted, the presumption of negligence on its part arose, and the burden was upon it to overcome that presumption. 69 Ark. 380; 65 Ark. 238; 57 Ark. 141; 80 Ark. 19. The finding of the jury will not be disturbed where there is any evidence to support it, nor where the verdict is based upon conflicting evidence. 57 Ark. 577; 84 Ark. 241; 14 Ark. 21; 23 Ark. 131; *Id.* 159; 11 Ark. 630; 46 Ark. 149; 7 Ark. 470; 31 Ark. 163; 58 Ark. 139; 67 Ark. 399; 67 Ark. 537; *Id.* 433; 65 Ark. 120; *Id.* 255; 76 Ark. 326; 23 Ark. 208; *Id.* 32.

3. If the circumstances of a particular case are such that an ordinarily prudent person might not have expected a train to pass at the time, it is a question for the jury to say whether he was guilty of contributory negligence. 79 Ark. 138; 20 S. W. 490; *Id.* 163; 26 S. W. 20; 88 Am. Dec. 353; 18 L. R. A. 60; 9 L. R. A. 521; 101 N. Y. 419; 140 N. Y. 639; 147 Mass. 495; 116 Mass. 540; 4 Am. St. Rep. 364; 105 Ind. 406; 66 Fed. 502; 63 Wis. 152; 77 Wis. 349; 72 Wis. 523; 56 Mich. 1; 105 Ind. 404; 26 S. W. 20; 89 Hun, 596; 84 Me. 117; 132 Mass. 269; 68 Miss. 566.

4. The act of the company's employes in backing the train on the "Y" threw deceased off his guard, and was responsible for his walking on down the track; hence he was not, under the circumstances, guilty of contributory negligence. 78 Ark. 61; Elliott on Railroads, 1171; 2 Wood on Railroads, 1546; 59 Fed. 237; 49 Fed. 814; 154 Mass. 189; L. R. 7 Eng. & Irish App. 12; 138 Ind. 600; 30 Minn. 482.

5. A judgment will not be reversed for refusal to give an instruction asked where substantially the same instruction has been given. 52 Ark. 181; 34 Ark. 651; 51 Ark. 147; 46 Ark. 152; 28 Ark. 9; 6 Pet. 622; 9 Pet. 418; 43 Ark. 185; 78 Ark. 58; 67 Ark. 531. The objection to the second instruction is not well taken. If appellant's employees discovered deceased on the tracks in time, by the use of ordinary care and skill, to avoid the injury and failed to do so, appellee was entitled to recover. There is no similarity between this case and the Taylor case, 64 Ark. 364. There was evidence on which to base the instruction, and it was for the jury to reconcile the testimony or to say to whom they would give credit. 23 Ark. 159; 74 Ark. 407; 48 Ark. 106; 46 Ark. 513.

6. As to whether or not deceased was conscious after the injury, and suffered pain, was a question for the jury under the evidence, and their verdict on that point is conclusive. Moreover, the evidence is abundant to show conscious suffering. 59 Ark. 215; 84 Ark. 241.

7. It was also for the jury to say from the evidence whether the custom of the traveling public was such as to license the public in the use of the tracks and to make the deceased a licensee. 94 Fed. 323; Thompson, Neg. 1725, 1562, 1691. Where a railroad has for a long time permitted the public to travel along its tracks and right of way without objection, it thereby licenses the public to do so, and is bound to anticipate such use, and to exercise ordinary care to prevent injury. 23 Am. & Eng. Enc. of L. 742; Thompson, Neg. § § 1725, 1726 and notes; 18 S. W. 2; 7 S. W. 874; 58 Am. Rep. 514; 57 Am. Rep. 446; 62 Ark. 253; *Id.* 240; 36 Ark. 374; 61 Ark. 621; 29 S. W. (Tex.) 234; 54 S. W. (Tex.) 1056; 74 Fed. 359; *Id.* 286.

Wood, J., (after stating the facts.) Appellant assigns as error in its motion for new trial the giving of instructions numbered two, four and six, on the court's own motion. But there were no exceptions saved to the giving of these instructions, and we cannot therefore consider these assignments of error.

Among other requests for instructions asked by appellant and refused by the court was the following:

"You are instructed that when the deceased, Benjamin

Bratton, Sr., approached the railroad track of the defendant, and proceeded to walk on the same, he was bound to exercise ordinary prudence, as was fairly commensurate with the nature of the risk.  If he could see for a distance up or down the track, he was bound to look to see whether a train was approaching; and if the track could have been seen for only a short distance, he was bound to look and listen for an approaching train or engine; and if you find that by the exercise of these senses he might have avoided the injury, no recovery can be made."  Appellant duly saved its exceptions.

Benjamin Bratton, an aged man, on the night he was killed had been a passenger on appellant's train from the town of Marshall to the town of Leslie, in Searcy County.  He debarked from the train at the depot at Leslie, and was walking along the track of appellant going toward Leslie.  There was to be a public speaking at Leslie, and many passengers had gone down to Leslie from Marshall to attend the speaking.  The town of Leslie was some distance from the depot of appellant.  The passengers when they arrived at the depot usually went along the track of appellant in going to the town of Leslie.  That had been the custom since appellant's road had been built.  The roadbed and dump of appellant extended to a certain creek between the depot and the town, and a bridge over that creek that foot travelers crossed extended part of the way on the dump of appellant's roadbed.  The evidence was abundant to show that Bratton on the night in question was going along the way that passengers had been accustomed to go over appellant's track, with its knowledge and apparent acquiescence, since the building of its road.  The jury therefore were warranted in finding that Bratton was on the track of appellant at least by sufferance, if not by implied invitation, and that he was not a trespasser.  See *Garner* v. *Trumbull,* 94 Fed. 323, and cases cited.

It was the invariable rule, as shown by witnesses for appellant, for the engine, after arriving at the depot, to go down to the water tank, and it did on this occasion as it had always done.  But it appears, from the testimony of one of the witnesses for appellant, that there was reason for the conclusion or belief on the part of those who were walking on the track

that the engine had already been down to the water tank, and that it would not again run over the track in the direction the travellers were going at the time Bratton was killed, for one witness of appellant testified as follows: "The train had gone down and up there on the side track, and stopped. As the train came back, the old man (Bratton) was in the middle of the track, and I said "Look out!" He stepped off, and the train went on the siding. I got on the track again, I heard the train, and I looked back, and it was coming. We had got right there at the switch, and the shadow of the tank was there. The old man stepped on to the main line, and went into the shadow of the tank, about the same time, and I do not know whether the train hit him or whether he got his foot across the bar and fell down. The engine came very near hitting me. The bell was ringing before the engine started, and that was what caused me to look around." The witness was asked this question: "How close was the engine to him when you first saw him? Point out your positions on this map?" Answer. "(Indicating on the map.) *It was my understanding* that the train was going to stay there on that siding. I heard the engine bell ringing, and the exhaust at the same time, and I looked around, and saw it coming right close to me. I stepped off right quick, the old gentleman was right close to me. He stepped on where the tank makes a shadow. I do not know how it happened. I do not know whether it knocked him down or he fell down." Question (Handing witness paper.) "Point out where you were." Answer. "We stepped off right along here somewhere" (indicating). "After it went on the siding, we continued our walking along here. Right there is where he fell down or the engine knocked him down," etc. Again this witness was asked, "How far is it from the depot to the switches?" and answered: "One hundred and fifty or two hundred yards." Q. "After the train left the depot to pull down to the switch, you and Mr. Bratton, I believe you said, started down the track, following after the train. Now, then, the train had to go 200 or 300 yards to the switch. What did they do after they got down there?" Answer. "I was not acquainted with their manner of doing. I thought they were going to the tank to get water." Question. "They were not going to

back the train in there? Answer. "Yes, sir; it was my belief that when they went back on the side track, there was where they would stay the balance of the night."

We are of the opinion, from this testimony, that it was not proper for the court to tell the jury, as matter of law, that it was the duty of Bratton to look and listen. It was rather a question for the jury to say, under the circumstances, whether it was the duty of Bratton to look and listen. It appears from the testimony of the witness just quoted that the impression was made on his mind that the engine had *retired,* so to speak, for the night when it backed in on the Y or "siding." The same impression was doubtless made upon Bratton. At least, the jury might have so found. And, in the light of this evidence, it is impossible for us to say that the impression was not well founded. The record shows that a map or plat was used to explain the situation, distances, etc. The witnesses used this map or plat in giving the jury a detailed statement of the surroundings of Bratton at the time he was killed. That map has not been brought into the bill of exceptions, and is not in the record. So a material part of the evidence upon which the instructions were based, and the verdict was grounded, is not before us. The court did not err in refusing the instruction. The case, on the facts, is not like the cases of *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134; *Tiffin* v. *St. Louis, I. M. & S. Ry. Co.,* 78 Ark. 55; *Burns* v. *St. Louis S. W. Ry. Co.,* 76 Ark. 13; *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549; *Little Rock & Ft. S. Ry. Co.* v. *Blewitt,* 65 Ark. 235, where it is held under the facts there presented that it was the absolute duty of the party injured to have looked and listened. The case at bar is more like the case of *Scott* v. *St. Louis, I. M. & S. Ry. Co.,* 79 Ark. 137, and the principle there announced controls here. Where the circumstances were such that one of ordinary prudence might not expect a train to pass at that moment, it is a question for the jury to determine whether or not he has been guilty of contributory negligence. See *Tiffin* v. *St. Louis, I. M. & S. Ry. Co.,* 78 Ark. 55, where exceptions are recognized to the general rule; *Ferguson* v. *Wisconsin Central Ry. Co.,* 63 Wis. 145.

It is unnecessary for us to discuss in detail the question of

the negligence of the appellant and the contributory negligence of Bratton. It suffices to say that we have carefully considered the record bearing upon these questions, and we find no error in the instructions of the court. They were properly submitted. There was sufficient evidence to support the verdict of the jury, and to make these jury questions. There was also evidence to sustain the finding that Bratton was conscious after his injuries, and that he endured intense pain. The amount of the verdict is not questioned.

The case, so far as this record discloses, was properly tried, and the judgment is therefore affirmed.