ARKANSAS SHORT LINE *v.* BELLARS.

Opinion delivered January 30, 1928.

1. RAILROADS—PEDESTRIAN USING TRACK.—An adult woman walking upon a railroad track in preference to using a path alongside the the track, was not an invitee but a bare licensee in using the track, and refusal of an instruction on contributory negligence was reversible error in an action for injuries resulting from being struck by a motor car.

2. RAILROADS—DUTY TO MERE LICENSEE.—Railroad company owes to trespassers and bare licensees no affirmative duty to care, and

the only requirement is that the railroad must not willfully or wantonly injure them and must exercise ordinary care not to injure them after discovering their peril and inability to escape.

Appeal from Poinsett Circuit Court; *G. E. Keck,* Judge; reversed.

*Denver L. Dudley* and *N. F. Lamb,* for appellant.

*M. P. Watkins* and *Aaron McMullin,* for appellee.

WOOD, J. Two suits were filed in the circuit court of Poinsett County, one by Ollie Bellars and J. J. Bellars, husband of Ollie Bellars, the other by Jennie Tankersley and her husband, Thomas Tankersley. The two cases were consolidated and tried as one case. There was a verdict for each of the women plaintiffs for $5,500 and a verdict against the husbands. Motion for new trial was filed by defendants, overruled, and appeals taken.

The Tankersley case has been settled, and there is now only the case of Mrs. Bellars to be decided.

The plaintiff alleged, in substance, that she was in good health and perfect physical condition; that defendant, Arkansas Short Line, is a railway corporation; that on August 1, 1926, without fault or negligence on her part, she was struck and run over by a motor-car operated by defendant, Rufus Walters, an employee of the Arkansas Short Line, while he was in the line of his duty; that she was upon and about to cross the railway track within the city limits of Truman, Poinsett County, Arkansas, and at a point where the track had for a long time been used by pedestrians for the purpose of passing along or across the track; that such use of the track had been of long duration, open, notorious, and well known to defendants; that, while she was upon the tracks, defendant Walters wrongfully, carelessly and negligently ran a motor car against her, breaking and fracturing her leg, etc.; that the injuries so received were permanent, etc.; that Walters was operating the motor-car in a careless and negligent manner, in that he was running it at a dangerous and reckless speed, and did not keep a lookout, and did not make any effort to avoid striking plaintiff after discovering her peril; that he gave no alarm or

warning; that it was at a point where he knew the track was frequently used by pedestrians.

Defendants answered, denying all the material allegations of plaintiff's complaint; alleged that plaintiff was a trespasser without knowledge or consent of defendants; that plaintiff was guilty of contributory negligence.

The appellee testified that she lived at Truman, and, on August 1, last year, she and Mrs. Jennie Tankersley were going to her daughter's. It was a little after eight o'clock P.M. They went on the railroad track, and turned up the track toward town. They were walking between the rails when a motor-car hit her. Somebody hollered: "It was a motor car," and appellee started to get off. She testified that it hit her on the leg and head and rendered her unconscious. When the man hollered, she tried to jump off. Before she was hit she was in good health, but now her leg hurts her all the time. She is 48 years old. Before she went on the track she looked down the track and did not hear or see any trains. There is a path that goes up onto the railroad track. She went up there. Children went that way to school. Appellee had often walked on the track before, and others did too. People walked that way to town every day. Witness does not remember the path just south of the gravel road and right by the side of it. She just knows that they always went the other way because everybody else did. At the sides of the railroad and at the end of the ties there are two level, well-beaten paths, one on one side of the track and one on the other side. Witness testified that she got between the rails, as she met a man who went past her, and that he hollered, "Look out, here comes a motor-car." She had not heard the motor-car. The path along the gravel road was not a well-beaten, smooth one. There were weeds on either side, and they couldn't get along that path for that. They did not hear any motor-car that night. It was dark.

Mrs. Jennie Tankersley testified that she was on the track with Mrs. Bellars, and they started out about

seven-thirty; walked up the track for a bit; could not walk down on the side of the road because it had been raining. That everybody walks on the track that wants to. That they passed a man, and he told them that they had better get off the railroad, that a motor-car was coming, and, just as they went to step off, the car struck them. It threw witness one way and appellee another. Witness did not know that they ran any trains on that road on Sunday. This was Sunday night. There was a little path on each side. They had walked that way before, and everybody that wanted to walked it. It was the ordinary way for them to go. Children, men and women went that way. Witness had seen others on the track when she was on it. They had not heard a motor-car until the man hollered. Witness looked both ways. Mr. Walters, who operated the motor-car, came to witness, asked her if she was hurt, and told her he was trying to get home in time to put into headquarters the story about the wreck they had on the road the day before. He said he was going pretty fact. Witness did not know how far he went after he hit her before he stopped. Everybody walked on the railroad. Does not remember a little path along the road. Can't say that the path along the south side of the gravel road isn't a smooth and well beaten path used by pedestrians. All the path witness ever saw along the railroad was in the middle of the track. Mrs. Bellars said witness stepped up on the railroad track about the same time. They had walked on the railroad about the distance of the court room before being struck.

W. F. Webb, a farmer, testified that he had been to Memphis, and was returning home along the railroad track; saw he was going to meet a couple of ladies, and heard a noise coming. It was very dark, and there was quite a little driving on the hard road. It had been raining that day. It made it pretty dark, but you could tell how to walk. When witness got close to the ladies they saw him, and stepped up on the center of the track. Witness kept listening, and finally decided what he heard

was a motor-car. It must have been seventy-five or eighty feet from him, and he could see the bulk of something, but knew from the noise it was a motor-car. Witness saw that the ladies had not discovered the noise, and he called to them and told them they were going to get hit. One of them started to the right and one to the left. Another step would have put them off the track. Witness stopped and looked, and it looked like they went up five feet high. The car ran on up to a little crossing, and the man operating it came back as quickly as he could. Witness did not know how fast the motor-car was coming, but at a pretty good gait. It looked to witness like it was going around twenty-five miles an hour. Did not see that any apparent effort was made to stop it before it hit the ladies. Witness thinks that most of the people from Mr. Stacy's to Mr. Moose's walk the railroad more than they do the dirt road. You will see school-children and Singer men walking the track, either on the side of the track or between the track. Witness had not passed the women when he hollered at them. In going from Stacy's crossing to Lovell's store you will see them walking all the places. Witness did not hear any conversation between Mr. Walters and Mrs. Tankersley. Motor-cars don't have any signal that witness knows of. Witness used the railroad track all of the time.

A number of other witnesses testified substantially the same as the witness whose testimony is set out above, with reference to people walking on the track at this particular place.

The motor car had no light, and the accident occurred close to Truman, a town of three or four thousand people.

One witness testified that where the accident occurred was ninety feet from one of the streets.

R. S. Walters, one of the defendants, testified, in substance, that he was operating the motor-car and coming into town after he had finished his work. A cloud was coming up, and it began to look like rain, and wit-

ness started into town. He was one-quarter of a mile from Truman and within thirty or forty feet of some object, and he heard a man holler, and as he did, he could see the bulk of something, so he threw his car out of gear and threw on the brakes, and by that time hit the women. He went over to Mrs. Tankersley and asked her how bad she was hurt, and helped her up, and they got a doctor. To stop the car witness threw it out of gear and applied the brakes. It was dark, and he was looking ahead, because he did not want to hit anybody, and sometimes there were objects on track, and they have to go through that part of town very carefully. If a motorcar strikes something it will jump the track. The car was a small one. There was nothing else witness could have done after he discovered the people. The wheels slid on the rails. They were wet. A car cannot be stopped on a wet rail as quickly as on a dry one. Witness said he was coming between twelve and fifteen miles an hour. He had been driving faster, but it was dark, and he could not see the rail or anything else. Had seen a few pedestrians every day up and down the road. The majority of them walk on the side, each side of the track.

Witness had been with the company nineteen months. It was about eight o'clock or a little bit after when the car struck the women. He was not aware that there might be anybody on the track at night, but cannot say that he had ever been along there at that time of night before. He was looking for any obstacle. Was running the car with caution, so he could stop it. Saw these people possibly 30 or 40 feet. That was as far as he could see. He could stop the car in 100 or 125 feet. Witness could not see the rails. Had no light, but did not expect people out at that time of the night.

There are several witnesses that testified for the defendant and corroborated Walter's testimony as to the people using the track.

The defendants, in their prayer for instruction No. 1, asked the court to instruct the jury to return a verdict

for the defendants. Among other prayers, they also asked instruction No. 8, as follows:

"If you find from a preponderance of the evidence that the plaintiffs came from their home on Smith Street, on the north side of the railway track, out to the track and between the rails, and were walking between the rails along the track when struck by the motor-car; that near or adjacent to the railway and parallel with it was a gravel road; that upon the side of the road nearest the railway track was a pathway used by pedestrians; that on each side of the railway and at the end of the ties, but on the dump or grade, were well-beaten paths used by pedestrians; and that, instead of using or walking upon the road or any of these paths, the plaintiffs, Jennie Tankersley and Ollie Bellars, without any necessity therefor, elected to walk between the rails, then, in so doing, they were guilty of contributory negligence, and cannot recover in this suit."

The court refused above prayer for instruction, to which the defendants duly excepted.

From a judgment in favor of the plaintiffs is this appeal. The cause as to Mrs. Tankersley has been settled pending this appeal, and therefore only the appeal of the defendant as to Mrs. Bellars remains.

Giving the evidence its strongest probative force in favor of the appellee, Mrs. Bellars, she was a bare licensee. She was not on the tracks under circumstances which constituted an implied invitation on the part of the railway company to use its tracks as a footpath. The appellee herself and her companion, Mrs. Tankersley, both testified that there was a path on each side of the railroad tracks and a path leading up on the tracks "where everybody who wanted to walked—it was the ordinary way for them to go; children, men and women, went that way." Nevertheless the railway company did not extend to them any invitation, either express or implied, to use its tracks for a footpath. Travelers went that way purely from their own volition, because they thought it smoother or more convenient, and the railway

company merely passively acquiesced in such use of it. While the railway company did not forbid foot travelers to use its tracks, it certainly did not invite them to do so by any conditions which it created causing the foot travelers to use its tracks.

In *Mo. & North Ark. Ry. Co.* v. *Bratton*, 85 Ark. 326, 108 S. W. 518, passengers going to and from the station were accustomed to use the roadbed for a short distance. The passengers, when they arrived at the depot, usually went along the tracks of appellant in going to the town of Leslie, which was some distance from the railway station. In that case we held that the jury were warranted in finding that Bratton was on the tracks by the implied invitation of the railway company.

In *Moody* v. *St. L. I. M. & S. R. Co.*, 89 Ark. 103, 115 S. W. 400, 131 Am. St. Rep. 75, the railway company permitted its roadbed to obstruct-the natural drainage of water from an adjacent street so that it washed away the sidewalk, in consequence of which pedestrians used the railroad track as a footpath. Under these circumstances we held that foot travelers were using the railroad track as a highway by at least the implied invitation of the railway company.

In *Arkansas-Louisiana Ry. Co.* v. *Graves*, 98 Ark. 638, 132 S. W. 992, Graves, the plaintiff, was on a footpath crossing the railroad track that had been openly and notoriously used by the public as a crossing and as one of the approaches to the depot platform. -Those who used the crossing did so, not only by permission, but upon the implied invitation of the company.

In all the above cases the parties injured had a right to be on the railway tracks because they were invitees or licensees. But no such circumstances exist in the case at bar. Appellee, as we have stated, was not on the railway tracks by invitation of the railway company. Appellee was on the railway tracks under practically the same circumstances as shown in the case of *St. L. I. M. & S. R. Co.* v. *Tucka*, 95 Ark. 190-194, 129

S. W. 541, 542, where Judge BATTLE, speaking for the court, said:

"It was proved that the deceased and many others had for many years used a part of the railroad track upon which he was killed as a pathway, and had thereby acquired the right of licensees thereon. But this did not exonerate him from the perils of his situation while upon the track. * * * He was there without invitation and at his own peril, and was guilty of contributory negligence. There was no evidence that the appellant discovered him in time to protect him against injury, and his administratrix had no right to recover damages."

Another case almost parallel on the facts, and precisely so in doctrine, is that of the C., R. I. & P. Ry. Co. v. Payne, 103 Ark. 226, 146 S. W. 487, 39 L. R. A. (N. S.) 217, where we said:

"The undisputed evidence shows that appellee was a mere or bare licensee. She was using the footpath upon appellant's right-of-way for her own convenience, and not for any purpose connected with the business of appellant or for the common interest or mutual benefit of appellant and appellee. Appellant did no affirmative act to compel or induce appellee to use the footpath upon its right-of-way. It merely acquiesced in such use by appellee and the public. Under such circumstances it cannot be said that there was any implied invitation upon the part of appellant for the use of its right-of-way by appellee. Appellant therefore did not have to exercise ordinary care to make the pathway safe for appellee."

Appellee was likewise on the track under the same circumstances as in the case of Todd v. Ry. Co., 106 Ark. 390-392, 153 S. W. 602. Todd was on the crossing, which was the usual route of pedestrians crossing the railroad track. It was the usual custom of people going in that direction to use that path over the railroad track. The court, in that case, at page 397 (153 S. W. 604), used the following language:

"This case is unlike the cases where parties injured are upon the railway company's track or right-of-way

not only by permission but upon the implied invitation of the company. In such cases the railway company owes the duty of exercising ordinary care to avoid injury. Nor is it like the cases of travelers at a public crossing, where the right to use the public highway is not by permission of the company, but by virtue of the law. In all such cases the railway company owes to the traveler the duty of exercising care to avoid injuring him. But the present case is differentiated from the above by reason of the fact that the appellant here was not upon the track of the railway company at the time of the injury by reason of any invitation of the company, either expressed or implied. He was not about any business pertaining to the company, and, as already stated, he was a bare licensee.''

In many cases before the lookout statute, which does not apply here, this court has held that a railroad company owes trespassers and bare licensees no affirmative duty of care, and only the duty not to willfully or wantonly injure them, or the duty to exercise ordinary care not to injure them, after discovering their peril and inability to escape. To bare licensees railroad companies owe no affirmative duty of care, for such licensees take their license with the concomitant perils. *Ark. & La. Ry. Co.* v. *Sain,* 90 Ark. 278-284-285, 119 S. W. 659, 22 L. R. A. (N. S.) 910. See also *St. L. I. M. & S. R. Co.* v. *Pyles,* 114 Ark. 218, 169 S. W. 580; *St. L. I. M. & S. Ry. Co.* v. *Duckworth,* 119 Ark. 246, 117 S. W. 1148; *Mitchell* v. *Ozan-Graysonia Lumber Co.,* 151 Ark. 6, 235 S. W. 44; *Knight* v. *Farmers' & Merchants' Gin Co.,* 159 Ark. 423, 252 S. W. 30.

In *Knight* v. *Farmers' & Merchants' Gin Co., supra,* we said:

''In all our decisions on the subject—and there are many—we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser, so far as concerns the duty which the owner owes him for his protection; that he takes his license with its concomitant perils, and that

the owner owes him no duty of protection except to do no act to cause his injury after his presence there is discovered."

The above doctrine is firmly embedded in the jurisprudence of our State, and thus far no case has arisen of peculiar or unusual circumstances calling for an exception or modification of the doctrine, which in some jurisdictions is the case. See 3 Elliott on Railroads, § 1795 (1257) and cases there cited; 33 Cyc. 779-80, 22 R. C. L. 970; *Mason* v. *Southern Ry. Co.,* 58 S. C., 36 S. E. 440; *Southern Ry. Co.* v. *Chapman,* 124 Ga. 1026, 53 S. E. 693, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675, where the Supreme Court of Georgia, through Judge Lumpkin, discusses the subject in a learned opinion. The case of *Davis* v. *Scott,* 151 Ark. 34-44, 235 S. W. 407, is not in conflict with the doctrine above announced in all our cases. Neither does that case state an exception or modification to the above doctrine of our cases. The case differs from the case at bar on the facts. Likewise the cases of *St. L. S. W. Ry. Co.* v. *Mitchell,* 115 Ark. 339, 171 S. W. 895, Ann. Cas. 1916E, 317; *Cook* v. *Mo. Pac. Rd. Co.,* 160 Ark. 523, 254 S. W. 680; and *Jonesboro, L. C. & E. R. Co.* v. *Wright,* 170 Ark. 815, 281 S. W. 374, are not applicable here. The Mitchell case, *supra,* although a motor-car case, was nevertheless a public crossing case, and the Cook case and the Wright case were public crossing cases. These cases all arose since the passage of the lookout statute, § 8568, C. & M. Digest, and none of them are applicable here.

We do not mean to decide, and do not decide, that there may not be peculiar circumstances calling for modification or exception to the rule. It will be time enough to recognize a modification or exception to the rule when a case is presented that calls for a modification or exception. Here the appellee was an adult, in the full possession of all her faculties. She deliberately chose to walk upon the railroad tracks to subserve her own convenience, when there were other ways she might have gone and been wholly free from danger of passing

trains or motor-cars. The undisputed evidence shows that she chose this way because it was a way frequently traveled by pedestrians, and she deemed the same a more convenient or pleasant way to go rather than to pursue the paths along the sides of the track that involved no danger whatever. Under such circumstances appellee is nothing more nor less than a bare licensee, and is not in an attitude to claim that. the appellant is liable to her under a modification or exception that might perhaps be made under other peculiar and extraordinary circumstances.

The record presents a typical case of a *bare licensee,* and, since the cause must be reversed on this ground, we find it unnecessary to consider any other. It follows from what we have said that the court erred in refusing appellant's prayers for instructions Nos. 1 and 8, set out above. For the error indicated the judgment is reversed, and the cause is remanded for a new trial.

HUMPHREYS and MEHAFFY, JJ., dissent.