MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* NEWTON.

4-6979                                        168 S. W. 2d 812

Opinion delivered February 22, 1943.

---

[5] Gross & Janes made settlement and their judgment is not to be considered.

354

*Henry Donham* and *Pat Mehaffy,* for appellant.

*Wm. F. Denman* and *W. R. Donham,* for appellee.

McFADDIN, J. The town of Emmet, in Nevada county, is laid off into lots and blocks and streets and alleys. The Missouri Pacific railroad runs north and south through the center of the town. Either the railroad right-of-way runs along the center of First street, or else the street lies on both sides of the railroad right-of-way and parallel to it. The depot is east of the railroad track, and U. S. highway No. 67 is west of the railroad track and parallel to it. Main street is sixty feet wide and runs east and west at right angles to the railroad right-of-way. There is no vehicular crossing over the railroad right-of-way for Main street, because the depot of the appellant is sixty feet long, north and south, and thus blocks or obstructs all of Main street; but for a great many years pedestrians have used a foot path running just north of the depot to cross the railroad right-of-way in order to get from one side of town to the other.

Train No. 4 of appellant is a passenger and mail train and passes Emmet northbound, without stopping, at 5:40 a. m. On the morning of July 15, 1941, appellee walked along Main street from his home on the east side toward a truck on the highway on the west side of the tracks; and appellee proceeded along the path previously mentioned that crosses the railroad right-of-way as an extension of Main street. When he neared the railroad tracks, he heard the approaching northbound train No. 4, and he stood in the path previously described just a short distance from the railroad track waiting for the train to pass so he could continue his journey to his destination. The train was traveling sixty miles per

hour, and as it passed the station, a mail clerk threw from the train a mail pouch weighing more than twenty pounds, which struck the appellee and inflicted the injuries involved in this litigation.

From a verdict in favor of the appellee for $2,000, appellant has brought this appeal, assigning here the following as errors of the trial court: (1) Refusal to direct a verdict for the appellant at the conclusion of all the evidence; (2) giving of plaintiff's instruction No. 1; (3) excessive verdict.

## I.

### Defendant's Request for an Instructed Verdict.

Since the jury decided for the plaintiff (appellee), we give the evidence its strongest probative force in support of the verdict. *St. L., I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438, 135 S. W. 338; *Davis* v. *Trimble,* 76 Ark. 115, 88 S. W. 920, and other cases collected in West's Arkansas Digest, "Appeal and Error," § 1001.

With the above rule in mind, the following facts appear, in addition to those already given: The plaintiff was in the pathway just north of the station and a little west of the edge of the station, and as he stood there in the path on the railroad platform waiting for the train to pass, he was hit by the mail sack and received the injuries involved herein. The pathway had been used by the public to cross from the east part of Main street to the west part of Main street for many years. Several witnesses testified that the pathway had been in general use for at least twelve or thirteen years. There was a mail crane 180 feet north of the station, and southbound trains would throw mail pouches all the way from the mail crane to the door of the station. The mail clerk testified as to the speed of the train, and that he had made eight or ten trips prior to the one involved, but on different trains, and that he had received instructions from his predecessor to throw the mail at the *south* end of the platform and not at the *north* end, and he had regularly done this. Thus, the mail pouch, as thrown, was about 200 feet from the mail crane. Ice was thrown off at the work house some distance up the track, and if

the mail had been thrown off north of the station it would have been some distance away from the plaintiff.

With these facts, and others that appear, we find there was substantial evidence to take the case to the jury as to whether the appellee was a trespasser or a licensee on the one hand, or whether, on the other hand, he was an implied invitee; in which latter instance the railroad owed him the duty to exercise ordinary care to avoid injury to him. The status of the appellee at the time and place he was injured is seriously argued by the appellant, which claims that the appellee was a trespasser or bare licensee, and that the railroad company owed him no duty except to refrain from wantonly or willfully injuring him, and the appellant cites in that connection the following authorities: *St. Louis, I. M. & S. Ry. Co.* v. *Fairbairn,* 48 Ark. 491, 4 S. W. 50; *C., R. I. & P. Ry. Co.* v. *Payne,* 103 Ark. 226, 146 S. W. 487, 39 L. R. A., N. S., 217; *C., R. I. & P. Ry. Co.* v. *McCauley,* 196 Ark. 1177, 112 S. W. 2d 625; *C. ,R. I. & P. Ry. Co.* v. *Harrison,* 204 Ark. 361, 162 S. W. 2d 62; 52 C. J., § 2135; 22 R. C. L. 196.

If the appellee had been a trespasser or bare licensee, then the cases cited by appellant would be controlling, but under the facts in this case and the finding of the jury thereon, the appellee was an implied invitee at the time, and the appellant owed him the degree of care based on that status. In the case of *Arkansas & Louisiana Ry. Co.* v. *Graves,* 96 Ark. 638, 132 S. W. 992, Judge McCulloch, speaking for the court, said: ''The evidence tends to show that the place where the plaintiff was injured had for many years—in fact, since the railroad was first put into operation—been openly and notoriously used by the public as a crossing, and that it was used as one of the approaches to the depot platform. Those who used the crossing did so not only by the permission but upon the implied invitation of the company, and the latter's servants owed them the duty of exercising ordinary care to avoid injury. *Moody* v. *St. Louis, I. M. & S. Ry. Co.,* 89 Ark. 103, 115 S. W. 400, 131 Am. St .Rep. 75; *Missouri & N. A. Rd. Co.* v. *Bratton,* 85 Ark. 326, 108 S. W. 518.''

The quotation above finds full application in the facts in the case at bar. Here, as in the cited case above, evidence tends to show that the place where the plaintiff was injured had been for many years openly and notoriously used by the public as a crossing and as one of the approaches to the depot platform, and that those who used the crossing did so not only by the permission, but by the implied invitation of the company. In the case of *Todd* v. *St. Louis, I. M. & S. Ry. Co.,* 106 Ark. 390, 153 S. W. 602, Judge WOOD, speaking for the court, referred to the Graves case, pointing out that in the Graves case, where a person was an implied invitee, the railway company owes the duty of exercising ordinary care to avoid injury. In the case of *Arkansas Short Line* v. *Bellars,* 176 Ark. 53, 2 S. W. 2d 683, Judge WOOD, speaking for the court, cited and distinguished a number of cases, some where, by the facts, the plaintiff was a trespasser or licensee; and others, where the plaintiff, by the facts, was an implied invitee, and in speaking of the Graves case, Judge WOOD said: "Graves, the plaintiff, was on a footpath crossing the railroad track that had been openly and notoriously used by the public as a crossing and as one of the approaches to the depot platform. Those who used the crossing did so, not only by permission, but upon the implied invitation of the company. . . ." Judge WOOD continued: "In such cases the railway company owes the duty of exercising ordinary care to avoid injury."

The question was submitted to the jury as to whether or not this pathway across the tracks was being, and had been, used by the public in general for many years. In 44 Am. Jur. 680, it is recognized that where the highway leads to, but does not cross the railroad, there can still be an implied invitation to cross the tracks, as for example where the railroad company constructs a passageway across its tracks for the use of the public. Certainly, the continued use of a passageway by the public would come within the same rule. In *St. Louis, I. M. & S. Ry. Co.* v. *Neely,* 63 Ark. 636, 40 S. W. 130, 37 L. R. A. 616, and *St. Louis, S. W. Ry. Co.* v. *Underwood,* 74 Ark. 610, 86 S. W. 804, the pedestrian was injured

while in the street, alongside the railroad, and recovery was sustained. In *St. Louis, I. M. & S. Ry. Co.* v. *Hudson*, 86 Ark. 183, 110 S. W. 590, the plaintiff was on a path across the right-of-way and recovery was sustained. Whether the map introduced by the appellant shows that the depot blocks Main street or whether Main street did not extend across the right-of-way, still there was a "Main street" on each side of the track, and the public generally had used that pathway for many years; and under the jury verdict, the appellee occupied the status of an implied invitee rather than that of a licensee or trespasser. That is the distinction between the cases cited by the appellant and those relied on by the appellee.

As further grounds for its request for instructed verdict, the appellant urges that it is not responsible for the acts of the postal clerk, since he was an employee of the federal government and not an employee of the railroad company. One of the leading cases of the so-called "Mail Bag Cases" is the case of *Huddleston* v. *St. Louis, I. M. & S. Ry. Co.*, 90 Ark. 378, 119 S. W. 280, which has been followed in the more recent case of *Missouri Pacific Railroad Company* v. *Angus*, 188 Ark. 300, 65 S. W. 2d 543, and those cases are ruling here. The basis of liability of the railroad company is not on the doctrine of *respondeat superior,* but is on the basis of dangerous practices. In the annotation on this subject in 34 A. L. R. 520, the rule is stated as follows: "A railroad company may become liable for damages resulting from the negligence of a postal clerk, where, without objection, although objection might be effective, and with notice, actual or constructive, it suffers him to engage in practices dangerous to those in proximity to its tracks, and to whom it owes the duty to protect them from injury."

In the said annotation, the cases from various jurisdictions are collected; and, as before stated, the Huddleston case from this court is one of the cases frequently cited. In 52 C. J. 759, the rule is recognized that the railroad company is liable for the negligence of a railway mail clerk in the employ of the government, in throwing mail sacks from a moving train, by reason of which,

injury to third persons resulted, where it is shown that the mail clerk is accustomed to throwing mail sacks at that place and the company knew and acquiesced in the custom. And to the same effect is 44 Am. Jur. 701. In the case here before us, the testimony of the mail clerk himself was that the mail sacks had been thrown at the *south* end of the station and not at the mail crane, and that such were his instructions; and there was testimony of other witnesses that mail pouches had been thrown all the way from the station up to the mail crane, 180 feet away. Certainly, the railroad had notice of how this was being done; and had failed to take proper steps to protect implied invitees on its premises. We follow and apply in this case the Huddleston case and the Angus case, previously cited; and so the defendant's request for an instructed verdict at the conclusion of the evidence was properly overruled.

## II.

### Giving Plaintiff's Instruction No. 1.

The appellant next complains that the court erred in giving plaintiff's instruction No. 1. That instruction reads as follows: "The jury are instructed that if you find from a preponderance of the evidence in this case that on or about the 15th or 16th day of July, 1941, the plaintiff, Will Newton, was about to cross over the railroad tracks of the defendant at or near its depot or station house at Emmet, Arkansas, using a pathway across said railroad tracks, which pathway across said railroad tracks had been used by the public in general for many years, and you further find from a preponderance of the evidence that the defendant knew, or by the exercise of ordinary care could and should have known said pathway across said tracks was and had been used by the public in general for many years, if you in fact find that said pathway was and had been so used by the public in general for many years, and that as the plaintiff using said pathway at or near the defendants' depot or station house and about to cross defendants' tracks, he observed defendants' fast passenger train approaching from the south, stopped and waited for said train to

pass, and while thus standing in or near said pathway as charged in his complaint, and you further find that the defendant caused said train to run past said depot or station house, and while said train was thus running past said depot or station house, while the plaintiff, Will Newton, was thus standing in the usual place, in or near said pathway, waiting for said train to pass, a mail clerk riding upon defendants' said train, with the permission of the defendant, threw a mail pouch from one of the coaches of said train and the plaintiff was thereby struck by said mail pouch and injured as charged in his complaint, and that the mail clerk, whom the defendant had permitted to ride upon its train had been for a long period of time accustomed to throw mail pouches from defendants' train at said depot, and you further find that the defendant had knowledge of such practice, if any, and had permitted it, and the defendant in permitting said mail pouch to be thrown from its train in such manner, if you find from a preponderance of the evidence that defendant did permit such mail pouch to be thrown from its train in such manner, the defendant failed to exercise reasonable care for the safety of persons near its depot or station house about to cross its tracks, and that such conduct, if you find such conduct then and there occurred, was the cause of plaintiff's injury, if any, and you further find that the plaintiff was not guilty of contributory negligence on his part, then, in such event the plaintiff would be entitled to recover herein.''

There was evidence of a substantial nature on every factual item involved in the said instruction. The appellant specifically objected to the instruction because it was abstract. This is not well taken. The appellant further specifically objected to the instruction, claiming that there was no testimony: (a) to substantiate the theory that the plaintiff waited for the train; or (b) that the plaintiff was standing in the path; or (c) that the mail clerk had the permission of the defendant to throw the mail; or (d) that the defendant had permitted the mail clerk to follow this custom. There was testimony on each of these matters, as we have previously men-

tioned. The specific objection also offered to this instruction was that the mail clerk was an agent of the federal government. We have disposed of that contention. Finally, it was claimed that the plaintiff was a bare licensee, and we have disposed of that contention. So we conclude that plaintiff's instruction No. 1 was correct and proper against the general and specific objections aimed at it by the appellant.

## III.

### The Verdict is Excessive.

Finally, the appellant urges that the verdict was grossly excessive, and with this contention we agree. This question of when a verdict is grossly excessive is one of the many perplexing problems that an appellate court has to consider. A trial jury views the plaintiff first-hand, and determines the amount of the verdict, and under our system of jurisprudence that verdict should not be disturbed unless it is grossly excessive. The right of trial by jury is guaranteed by our Constitution, and by the very nature of our government, trial by jury is a bulwark against oppression and radical changes: so an appellate court should consider the case most seriously before reducing any verdict. Yet, appellate judges have a sworn duty to perform; and when, after reviewing all of the evidence in a case, the appellate court reaches the conclusion that the verdict is grossly excessive, then it is the sworn duty of the appellate court to indicate the correct amount of the verdict. Just as we would reverse a case because of errors in instructions, so, the case should be reversed if the verdict is grossly excessive. That is the recognized practice.

As early as the case of *Dodds* v. *Roane,* 36 Ark. 511 (1880), this court, speaking by Chief Justice ENGLISH, in a suit for damages determined the amount in which the verdict was excessive and affirmed the case on condition that the appellee enter a remittitur for the excessive amount or suffer the case to be reversed and remanded. In the case of *Little Rock & Fort Smith Railway Co.* v. *Barker,* 39 Ark. 491 (1882), this court, speaking by

Chief Justice ENGLISH, recognized the practice of a remittitur in personal injury actions. In that case the court reviewed authorities from many jurisdictions, and stated: "The amount of damages to be recovered is not limited by the statute, and could not be under the constitutional provision above cited. But a jury is not left without restraint in the matter of assessing damages for the death of a minor, or in any other case. If the damages assessed are so enormous as to shock the sense of justice, and to indicate that the verdict is the result of passion or prejudice, the trial judge may set it aside, and if he refuse, this court, on appeal or writ of error, may do so."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Brabbzson,* 87 Ark. 109 (1908), 112 S. W. 222, Justice McCULLOCH reviewed a case of injury where the verdict was $2,000, and said: "We think that an assessment of damages at any sum over $1,000 is excessive, but the evidence sustains a recovery of that amount. If the jury had assessed the damages at that or a less sum, we would let it stand. *St. Louis, I. M. & S. Ry. Co.* v. *Snell,* 82 Ark. 61, 100 S. W. 67. If, therefore, appellee will, within fifteen days, remit the amount of damages down to $1,000, the judgment will stand affirmed; otherwise the judgment will be reversed, and the cause remanded for a new trial."

For other cases of remittitur in personal injury actions, see *St. Louis, I. M. & S. Ry. Co.* v. *Hesterly,* 98 Ark. 240 (1911), 135 S. W. 874; *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 100 Ark. 107 (1911), 140 S. W. 279. We mention these cases decided more than a quarter of a century ago to show that the court is not indulging in a new or recent practice, but is following a well-established rule almost as old as our system of jurisprudence.

The plaintiff testified in this case he had been injured for a period of nine and one-half months. Prior to his injury, he was earning regularly $1.25 a day, and when he worked overtime he would earn as much as $3 a day. But the plaintiff offered no testimony of any kind to the effect that his injury might be permanent. There is nothing to show that he would not be able to

return to work the day after the verdict. The plaintiff offered no medical testimony. On the other hand, the defendant offered the testimony of a medical expert whose qualifications were conceded by the plaintiff; and that medical expert testified that the plaintiff was not seriously or permanently hurt; that he had no fracture or broken bones, and that there was nothing to keep him from going back to work. If the plaintiff could have earned as much as $2 a day for every work day from the time he was hurt until the time of the trial, his loss in wages would be only $475. In addition to loss of earnings, he suffered pain and complains of his hearing.

The plaintiff recovered a verdict for $2,000. Under the record in this case, any verdict in excess of $1,000 would be grossly excessive; and, if, within fifteen juridical days, a remittitur of $1,000 is entered by the appellee, then the case will be affirmed; otherwise, the cause is reversed and remanded for a new trial because of the excessive verdict.